## HENSHAW *v.* STATE.

Opinion delivered January 27, 1900.

1. TRIAL—MISCONDUCT OF PROSECUTING ATTORNEY.—The prosecuting attorney asked one of the defendant's witnesses whether he was not the same person that the state had up for cattle-stealing in an adjoining county. On defendant's objection, the question was withdrawn, but the prosecuting attorney, in the jury's hearing, said to defendant's attorney: "If you bring your jail birds here, I want the jury to know it." Thereupon defendant objected, and asked the court to reprimand the prosecuting attorney, and to instruct the jury to ignore the remark. The court sustained the objection, saying, "That is improper." *Held,* that the court's failure to reprimand the prosecuting attorney more severely was not prejudicial error. (Page 367.)

2. SAME.—The fact that the assistant prosecuting attorney denounced defendant's conduct in language much too severe, though not without support from the testimony, will not be ground for reversal if, upon objection, the language was withdrawn from the jury's consideration. (Page 369.)

3. JURY—SELECTION.—After one juror had been selected, a special venire issued for 22 jurors, but only 20 appeared, and the court proceeded to have the remainder of the jury selected from this number, over defendant's objection. The latter failed to exhaust his peremptory challenges, and a jury was filled out from the 20 who appeared. *Held,* no prejudicial error. (Page 370.)

Appeal from Poinsett Circuit Court.

FELIX G. TAYLOR, Judge.

*J. J. Mardis* and *N. F. Lamb,* for appellant.

It was error for the court to refuse to reprimand the prosecuting attorney for his misconduct, and instruct the jury to ignore the question to the witness and the statement made by the prosecuting attorney. 61 Ill. App. 55; 12 Mo. App. 431; 2 S. W. 585; 62 N. W. 572; 32 N. W. 849; 58 Ark. 473; *ib.* 353; 150 U. S. 76; 64 N. W. 261; 34 S. W. 228; 24 N. W. 390; 39 N. W. 585; 1 Bish. New Cr. Proc. § 975a; 27 S. W. 1109; 11 Ga. 615, 628; 65 N. C. 505; 75 N. C. 306; 79 N. C. 589; 41 N. E. 545; 32 S. W. 1149; 5 S. W. 842;

8 Tex. App. 416; 41 N. H. 317; 8 S. W. 749; 11 S. W. 462; 61 N. W. 246; 27 S. W. 128; 65 N. W. 61; 2 N. E. 296; 8 Tex. App. 416. It was error for the court to compel the defendant to proceed with the selection of a jury from a venire of only twenty persons, when eleven were required to complete the jury. Sand. & H. Dig., § 2194; 68 Ala. 515; 11 S. W. 723; 4 S. W. 816; 9 So. 429; 9 Pac. 925; 10 S. E. 979; 10 So. 433; 5 S. W. 251; 6 So. 368; 12 So. 906; 14 So. 111; 6 So. 395; *ib.* 396; 1 C. C. A. 53; *ib.* 286; 36 Pac. 7; 26 S. W. 388; 16 So. 264; 36 Pac. 7; 12 So. 906; 14 So. 111; 47 N. W. 306; 13 S. E. 73; 19 Atl. 376; 11 S. W. 1117; 2 S. W. 726; 23 N. W. 245; 5 S. W. 251, 254.

*Jeff Davis, Attorney General,* and *Chas. Jacobson,* for appellee.

Since the adoption of the code, a prisoner has no right to a list of the jury. 35 Ark. 639; 38 Ark. 304. The court may excuse a talesman for any ground deemed sufficient. 29 Ark. 17; 35 Ark. 639; 44 Ark. 115. Appellant was not entitled to any particular juryman; and the use of a peremptory challenge could not have prejudiced him, when he did not use all his peremptory challenges before the panel was complete. 30 Ark. 328; 35 Ark. 639; 45 Ark. 169. No prejudice having resulted to appellant, the irregularity complained of is not reversible error. 11 Nev. 108; 8 Tex. App. 398; 29 Ga. 483. Appellant should have moved to set the panel aside. 29 Ark. 17; 5 Ark. 444; 21 Ark. 213.

BUNN, C. J. This is an indictment for murder in the first degree; trial and conviction for manslaughter, and sentence to three years' imprisonment in the penitentiary; and the defendant appealed to this court.

The defendant admits that the evidence is sufficient to sustain the verdict, and relies for reversal on errors of law.

A brief statement of the facts, however, will possibly throw light on the rulings of the trial court, which are the subject of exception and complaint before us.

The defendant is a young man, and at the time was looking after the business of his mother, who had rented land to

the deceased for the year, who, as her tenant, had made and was about gathering a crop thereon. The defendant and deceased had had a difficulty concerning the rents due from deceased to defendant's mother, and one or more wordy conflicts had arisen between them. Each party was more or less incensed at the conduct and language of the other. Quoting from the brief and abstract of defendant's counsel: "The evidence adduced by defendant tends to show that Barker (the deceased) was a tenant on a farm belonging to defendant's mother; that a difficulty had arisen over the rent; that Barker had abused appellant's mother, and had threatened to do violence to appellant; that on the day of the killing appellant had been to Harrisburg (the county town), and consulted an attorney with reference to the rent; had procured papers to file before a justice of the peace the next day, with a view to enforcing his mother's lien for the rent; that on returning from Harrisburg he went over to Barker's house to see if a settlement could be made; called Barker out to the gate; moved away with him twenty or thirty steps; asked him if he would pay the rent without suit; that Barker thereupon became angry and abusive; struck at appellant with a large club; cut at him with his knife, cutting his shirt and suspender; and that appellant thereupon drew his pistol and killed Barker." As to what occurred between the defendant and deceased after the latter had gone out to meet the former, at his invitation, in front of the gate, the testimony for the state makes quite a different case from that made by the evidence on the part of the defendant, he being his only witness as to that.

The first error of the trial court, assigned and insisted on by the defendant, is the refusal of the court to properly instruct the jury as to improper remarks of state's counsel made before them, and its refusal to reprimand said counsel for making said remarks. It appears that, on cross-examination of Henry Moss, a witness for defendant, the prosecuting attorney interrogated the witness thus: "If he was not the same Henry Moss we had up for cattle stealing in Craighead county;" which being objected to by defendant's counsel, the same was, in words, withdrawn by the prosecuting attorney, who, apparently in explanation of

his reason for asking the question, addressing himself to the defendant's counsel, but in the hearing of the jury, further said: "If you bring your jail birds here, I want the jury to know it." Objected to by the defendant's counsel, and objection sustained by the court, using the following language: "That is improper." The defendant, at the time of making the objection to the question and the remarks of the prosecuting attorney, also asked the court 'to reprimand the prosecuting attorney for asking the question and making the remark, and to instruct the jury to ignore the same, which the court refusing to do, the defendant excepted. The court might have been a little more emphatic in instructing the jury on the subject, but we do not think we can safely circumscribe trial judges to such minuteness of expression as asked in this controversy. They are present conducting the trial, and it is only in case of manifest abuse of discretion that they should be interfered with. The same may be said, but with still more emphasis, as to the court's refusal to reprimand the prosecuting attorney. The persistency in disobeying the rules of court, and contumaciousness in unbecoming conduct generally, which alone would call forth a reprimand of a public officer representing the state, are matters to be dealt with cautiously, for fear that the remedy may prove worse than the disease. Each judge ought to and does have a sound discretion when and where to employ this method of discipline, and this discretion ought not to be controlled by appellate courts, except in extreme cases, and where the control is clearly right and proper.

Not as a matter affecting the legal proposition, but rather to show that this whole controversy had a rather unnecessary origin, the witness Moss, having been permitted finally to proceed and give his testimony, said that he had heard deceased say on one occasion, when talking about the crop, that "he would take Henshaw by the heel and wear his head out against the ground;" and again, within a month before the killing, he had heard deceased say he had a crop on Henshaw's place, and that they had some trouble, and that he had made him (defendant) take some calves out of the field, and "if that outfit [meaning the Henshaws] fools with me, I will go up, and throw the

whole business out.   They have fooled with me about all they are going to."   This was evidence adduced on the part of the defendant to show that threats had been made by the deceased against the defendant, and as a defense against the charge against him.   Such threats, if threats they were, were not such as would justify a homicide, or even such as would induce the threatened party to put himself on his guard.   They were, in fact, incapable of being carried into execution, or amounted to mere idle talk or boasting, indicating only that no good feeling existed between the parties.   There was, however, some degree of prejudicial error, some unfairness, in the question and the subsequent remark.   It does not appear that the witness had ever been convicted of cattle stealing.   He was therefore innocent of such a charge, and it was improper to cast this reflection upon him, and through him upon the defendant and his cause.   But the remarks of the court may have been all sufficient to give the jury to understand how to treat this matter. It is not easy to suppose that any one is so ignorant as not to understand the meaning of words used by the court in this connection.

The assistant prosecuting attorney, in his opening argument to the jury, used the following language, viz.:   "The defendant is a scoundrel, and an incarnate fiend; the defense from beginning to end is branded as a lie, and manufactured for the purpose.   The defendant went to the home of Barker when all honest men should have been at home, and like a thief in the night."   Objection being made, the assistant prosecuting attorney withdrew the remarks, and, on further objection, the court said: "The remarks are improper, but have been withdrawn, and cannot be considered;" and defendant excepted, and asked that his exceptions be noted of record, which was done.   While the language used is objectionable for its extravagance of denunciation, and for that reason ought never to be heard in a court room, yet, if the testimony on the part of the state was to be believed,—and the prosecuting attorney had a right to insist on that,—the conduct of the defendant, in going to his enemy's house in the night time, arousing and calling him out to a distance in the dark, so as to be out of hearing **of the**

family, and then shooting him down, certainly subjected him to the severest denunciation, and the same could scarcely be said to be entirely unwarranted by the testimony. Again, the obviously futile effort to show by previous threats that the homicide was justified was the subject of just adverse criticism, and to what extent this should or should not have been carried, it is impossible to say accurately. The only reasonable defense in the case was in the testimony of the defendant himself, in making his case one of self-defense against the onslaught of deceased at the time. Under the circumstances, it is impossible to say just what the court could have done or ought to have done, more than it did do, to keep the scale of justice on even balance. In fact, the only thing else the court could have done would have been to set aside the verdict as a rebuke to the counsel for the state. But the public has some interest in such trials, and they are not had as mere occasions to enforce discipline in the courts. When attorneys abuse these privileges to the obstruction of the course of justice, we will not hesitate to reverse, but it will be because of possible injury to the opposite party, and not to punish the counsel of the other for stepping over the bounds of orderly procedure or of forensic discussion. But we lift the finger of warning to all, in order to impress upon them the truth that it is best and safest to refrain from all questionable language, for in the heat of discussion one is never a safe judge of how far he may go, and yet not prejudice the case of the opposite side, and thus take undue advantage to himself.

It is objected that the manner of selecting the jury was prejudicial to defendant. Some of the jurymen were selected— one, we believe—and twenty-two persons were ordered to be summoned, and they were summoned, but only twenty appeared. The court proceeded to have the selection made from these twenty, instead of requiring the presence of the twenty-two, and this over the objection of defendant. The defendant, it appears, did not exhaust his peremptory challenges. As he was not entitled to any particular jurymen, it is impossible to see in what way he was prejudiced by the fact that two did not appear, and thus furnish him the larger number from which to select;

for he accepted or rejected as each was turned over to him by the state, and there was in the twenty enough to whom he had no objection to make the jury. We can imagine that, if the two had presented themselves with the others, one or both of them might have been preferable to some or any of the twenty which the defendant chose to take, and to whom he had no objection; but if that were the case, or even might have been the case, the defendant should have rejected one or two of the twenty which were the least free from doubt, and thus caused the twenty-two to be presented. His contention seems to be that nothing could cure the defect unless all were presented at once. In fact, the law directs that all—the sufficient number—shall be summoned. That was done, but the error, if error there was, consisted in the two not appearing, and in the court's not stopping to have the two delinquents, or two other persons in their places, brought in. Technically, this was error, perhaps, but the prejudice of such an error is the barest possibility, if it exists at all.

Affirmed.

BATTLE, J., did not participate.