### ROSS v. UNITED STATES.
### No. 6275.

Circuit Court of Appeals, Seventh Circuit.

Nov. 2, 1937.

Leo Klein, of Chicago, Ill., for appellant.

A. Bradley Eben and Michael L. Igoe, both of Chicago, Ill., for the United States.

Before EVANS, SPARKS, and ALSCHULER, Circuit Judges.

EVANS, Circuit Judge.

Appellant was convicted of a conspiracy to possess and pass two $100 counterfeit treasury notes in violation of section 265 and section 88, Title 18 U.S.C.A. He assigns error based on (a) erroneous admission of evidence, (b) improper remarks of the district attorney to the jury, and (c) refusal of the court to direct a verdict in his favor.

Appellant was charged, in four counts of the indictment, with the possession and the passing of counterfeit bills, upon all of which counts the jury found him not guilty. It was only on the conspiracy charge that he was convicted and sentenced.

The evidence which supports the conviction came largely from a witness, Theodore Ritenour, who was named as one of the co-conspirators and who pleaded guilty to the charge and testified upon the trial as a Government witness. He had been insane and confined to an institution, and his competency as a witness was challenged.

There is no confusion in the law dealing with the competency of a witness who had been insane. A few of the leading authorities on this subject are cited below.[1] After reading Ritenour's testimony we are clearly satisfied of his competency. No objection was made to his testimony at the time it was offered, and we are convinced that he was laboring under no hallucinations or other mental disability. He told his story on direct examination and was fully cross-examined. In the course of that cross-examination he stated:

"* * I am the same Theodore Ritenour who was adjudged insane in the County Court of Cook County, on January 26, 1922. * * * I was sent to the Elgin

---

[1] Jones, Commentaries on Evidence, volume 5, § 2111; Longsdorf, Cyclopedia of 'Federal Procedure, volume 2, § 480; 28 Ruling Case Law, page 617; District of Columbia v. Arms, 107 U.S. 519, 2 S. Ct. 840, 27 L.Ed. 618; N. Y. Evening Post Co. v. Chaloner (C.C.A.) 265 F. 204.

952

Hospital. I was there about 8 or 9 months. Then I got discharged out of there.

"Q. Was there any adjudication of sanity as you remember it?

"A. No, sir, all I remember is that I had a nervous breakdown. I have not been committed to any asylum since then. I do not know who started the proceedings by which I was adjudged insane. * * * I was also sent to the North Chicago Hospital at the instance of the Veterans' Bureau. * *"

On the foregoing testimony the appellant moved to strike the testimony. It was properly denied. The evidence merely bore on the credibility of the witness.

 Appellant's chief reliance is upon the admission of evidence offered for impeachment purposes. Complaint is made because the court asked appellant this question,—"Have you ever been in trouble?" and because counsel for the Government asked the appellant several times whether he had been *arrested* under different names and at different places.

Such questions, by the weight of authority, were improper.[2]

Were they prejudicial? An examination of the record is necessary to answer this question.

Counsel for the Government has not attempted to justify these questions upon the record as presented to this court. He insists however that the appellant on direct examination opened the door for the cross-examination, but admits that the transcript before us does not include the question and answer given on direct examination which thus opened the door.

All that appears in the record is appellant's statement, "I am the same person as Sydney Rossman who was convicted on July 1, 1926 on Grand Larceny and sent to Joliet for 4 years."

The cross-examination was directed almost exclusively to Rossman's arrests, etc. As it is short, we give it in full.

"Q. You were again arrested on December 4, 1931, weren't you?"

To which question counsel for defendant objected, which objection was overruled by the Court, and to which ruling of the Court the defendant, by his counsel, excepted.

"Q. You were again arrested on December 4, 1931, were you not, under the name of Sydney Rossman?

"A. If you have got it there, maybe I was.

"Q. As Edward Ross you were again arrested on February 14, 1935 and fined $50.00 and costs?

"A. I might have been arrested, but I have never been fined. That was the only conviction against me in my life, when I was 20 years old.

"Q. You were arrested on February 15, 1935 as Edward Ross?"

To which question defendant by his counsel objected, and thereupon the Court overruled the objection, to which ruling the defendant by his counsel excepted.

"The Court: You opened the door for this.

"Mr. Klein: No, your Honor, I don't think so.

"The Witness: A. I have only been arrested for disorderly conduct and I have never been fined.

"The Court: Q. Have you ever been in trouble?

"The Witness: A. No, sir, I have been picked up on suspicion."

It is worthy of note that the first question was objected to, and no answer was given although the court overruled the objection. The second and third questions were not objected to. The fifth question was objected to and the objection overruled, but no answer was given. The witness then made an answer, which is uncontradicted, wherein he stated that he had been arrested for disorderly conduct, but never had been fined. Then the court's question which is the chief cause of counsel's complaint, "Have you ever been in trouble?" followed by the witness' answer, "I have been picked up on suspicion."

The questions were improper. Counsel for the Government now concedes it although still insisting that if the record were complete it would show that on direct examination appellant was asked whether he had ever been in trouble other than when he was sentenced to the penitentiary.

[2] Jones, Commentaries on Evidence, volume 5, §§ 2370, 2371; volume 28 Ruling Case Law, page 627; 103 A.L.R. page 350; Mitrovich v. U. S. (C.C.A.) 15 F.(2d) 163.

We must take the record as presented and, as it stands, hold that the questions were objectionable. Likewise, we are persuaded that the objections made were sufficient to preserve the assigned errors.

We are equally well satisfied that appellant was not prejudiced so as to justify our ordering a new trial. He had, on direct examination, admitted that he had been convicted of grand larceny and had been sentenced to the penitentiary for four years in 1926. He stated he had been arrested but not fined since that time. The evidence which damaged appellant was brought out on direct examination.

The *effect* of these improper questions must be determined by the answers, not by the questions. The questions were improper, but the effect of the erroneous ruling is to be found in the answers. The purport of these answers was comparable to self-serving declarations from which the jury could not have been prejudiced against the accused in the light of his conviction of a serious charge and his four year sentence to Joliet.

The record fails to support any error based on the comments of counsel to the jury. The statement attributed to the district attorney was apparently unchallenged at the time it was made. The pertinency of counsel's statement is not understood without explanation. Evidently there was some question about who should have produced a witness by the name of Eddie Lehman. Each side believed it was the other's duty to subpoena him. The remarks dealt with his absence, and the fair inference is that both sides would have liked to have had him, but neither was so certain about him as to subpoena him.

On the question of directed verdict, we are satisfied that, if Ritenour's testimony were properly received, it with the counterfeit bills not only presented a jury question, but overwhelmingly established the appellant's guilt. To quote it at length would be inexcusable. The testimony was direct and positive. If true, appellant gave Ritenour the $100 bills to have him pass them at a gambling house. The proceeds were divided between the two. Ritenour also identified the counterfeit notes as the ones he passed.

There was persuasive corroboration of Ritenour's testimony. The fact that appellant accompanied Ritenour to the gambling house and observed him gamble and then pass the counterfeit $100 bill can hardly be satisfactorily explained.

The judgment is affirmed.