Hoyle Bruce BEDELL *v.* STATE of Arkansas

CR 74-150                                        521 S.W. 2d 200

Opinion delivered March 31, 1975
[Rehearing denied May 5, 1975.]

*Bon McCourtney & Associates,* by: *Stephen R. Bigger,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Robert Newcomb,* Asst. Atty. Gen., for appellee.

CONLEY BYRD, Justice. The appellant, Hoyle Bruce Bedell, was charged by information with the crime of manufacturing marijuana in that he "did unlawfully, wilfully, and feloniously grow and manufacture marijuana (Cannabis sativa L.)." Upon conviction at a jury trial he was sentenced to six years in the penitentiary and fined $3,000.

On appeal to this court Bedell has designated the following points he relies on for reversal:

> "I. The initial warrantless and unconsented search by government authorities, or ranging, of the defendant's farm lands beyond view from public roads was a trespass, constituting an illegal act which tainted all evidence flowing and resulting from this trespass as 'fruit of the poisonous tree,' and the court erred in overruling defendant's motion to suppress evidence.
>
> II. The subsequent search warrant issued pursuant to the initial warrantless searches was limited to search of the defendant's curtilage and residence, and a warrantless contemporaneous search of the defendant's three hundred six (306) acre farm was unauthorized, and the defendant's fourth amendment right should be recognized to extend to adjacent fenced farm lands con-

tiguous to one's residence.

III. The court erred by fatally prejudicing the jury in admitting evidence regarding defendant's possession and use of marijuana given the present circumstances of the defendant's procedural severance of the charges of (1) manufacturing marijuana and (2) possession of marijuana with intent to deliver, and in view of the court's refusal to give defendant's jury instruction number ten (10).

IV. The court erred in refusing defendant's proposed jury instruction number ten (10) which properly described the scope of the statutory definition of 'manufacture'."

The facts appear as follows: The appellant owned a 306 acre hill farm in Randolph County and lived in a house adjacent to the highway on the front or east side of the property. Much of the farm was in timber with small cleared areas near the middle of the west or back side of the tract of land. The fields or cleared areas were surrounded by timber with especially heavy timber and underbrush lying north of the cleared areas.

In September, 1973, the sheriff of Randolph County obtained information that marijuana might be growing on the appellant's land so he and one of his deputies entered the tract through heavy timber at the northwest corner of the tract and first found what appeared to be a single marijuana plant growing in a cleared area, referred to in the testimony as field No. 1. The officers returned to the area a few days later and found 17 plants in a second area; 27 plants in a third area, and 76 plants growing in still another cleared area. All the plants were in a state of cultivation with sawdust and what appeared to be fertilizer having been placed around them. The growing plants were located by following plastic pipes running from what was described as a small holding pond near a newly drilled water well and running to the area where the marijuana plants were found. The officers found the 76 plants in field No. 4 by following a hose which was attached to a pump installed in a dug well or cistern at an old

house place on the property. A plastic line also ran from this well in an easterly direction past a sawdust pile at an old sawmill set and then on toward the house where Bedell lived. The sheriff and his deputy confiscated the growing marijuana and preserved it in a black plastic bag, later introduced into evidence as state's exhibit No. 1. The sheriff testified that the marijuana plants were planted or set out in "hills" and that he observed hills in the four cleared areas where no plants were then growing.

On the basis of the information thus obtained, the sheriff obtained a search warrant and he and his deputies searched Mr. Bedell's house where they found a pillowcase containing marijuana; a glass bottle or jar containing marijuana cigarette butts; a plastic box containing marijuana cigarette butts, and a paper bag containing marijuana. These items, together with the plants taken from the fields, were introduced into evidence.

POINTS I & II. We agree with the state that the Fourth Amendment to the Constitution only protects against *unreasonable* searches and seizures of persons, houses, papers and effects and does not extend to open fields and forested areas. See *Hester* v. *United States*, 265 U.S. 57, 68 L. Ed. 898, 44 S. Ct. 445 (1924). Consequently we find no merit in points I & II.

POINTS III & IV. The appellant's third assignment, as designated, also includes his fourth assignment. We find no merit to the first part of the appellant's third assignment. We gather from the argument in appellant's brief that he may have been charged in a separate case with possession of marijuana with the intent to deliver, but there is no evidence that the jury was made aware of such additional charge. The appellant was being tried on the charge of manufacturing marijuana. The 121 growing marijuana plants were discovered in, and obtained from, fields on the appellant's land some distance from the house where he lived and, there was testimony indicating that the fields contained numerous hills where plants had been set or grown. The marijuana plants were all surrounded by sawdust and a large sawdust pile was located near the center of appellant's tract of land. A new

well had been drilled on the back side of the appellant's property with plastic pipe running to the area where marijuana plants were being cultivated. A gasoline pump with hose connected was found installed in a well or cistern on appellant's property. The hose from the pump ran to the area where the 76 marijuana plants were located, and a hardware merchant from Missouri testified that he sold the pump to the appellant. A filling station operator and gasoline motor mechanic from Missouri testified that he repaired the pump for the appellant. The sheriff testified, under cross-examination by the appellant's attorney, that it was his understanding the appellant had not lived on his property but a few months. So we conclude that the marijuana found in the appellant's house was strong circumstantial evidence that it was he who was growing the marijuana being cultivated on his farm and that it was admissible in evidence for that purpose.

We now come to the trial court's refusal to give appellant's Instruction #10. The Uniform Controlled Substances Act, Ark. Stat. Ann. §§ 82-2602 — 82-2638 (Supp. 1973), is an overall Act pertaining to all of the many controlled substances including marijuana. Section 82-2601 (m) reads as follows:

"(m) 'Manufacture' means the production, preparation, propagation, compounding, conversion or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container, *except that this term does not include the preparation or compounding of a controlled substance by an individual for his own use* or the preparation, compounding, packaging, or labeling of a controlled substance:

(1) by a practitioner as an incident to his administering or dispensing of a controlled substance in the course of professional practice; or

(2) by a practitioner or by his authorized agent under his supervision for the purpose of, or as an incident to, research, teaching, or chemical analysis and not for sale." [Emphasis ours].

The trial court instructed the jury in part as follows:

"6. The law defines 'manufacture' to mean the production, including the planting, cultivating, growing or harvesting of a controlled substance, *preparation*, propagation, conversion or *processing* of a controlled substance." [Emphasis ours].

"7. Manufacture means the production, *preparation*, propagation, conversion or *processing* of a controlled substance either directly or indirectly by extraction from substances of natural origin or depending by means of chemical synthesis, *and includes any packaging or repackaging of the substance*, or the labeling or relabeling of it, and it does include the growing or the cultivating of it." [Emphasis ours].

The appellant's requested Instruction No. 10 which was refused by the court reads as follows:

"10. You are hereby instructed that Manufacturing Marihuana means to grow, to produce, to cultivate, to propagate or to harvest marihuana, either directly by natural agricultural production or indirectly or independently, by means of chemical synthesis, and specifically excludes a practitioner or his agent preparing, compounding, packaging, prescribing, dispensing, ordering, or analyzing marihuana in the course of his professional practice, *and also specifically excludes the preparation or compounding of the controlled substance of marihuana by an individual for his own use.*" [Emphasis ours].

Obviously the exception in the definition of manufacture as to "the preparation or compounding of a controlled substance by an individual for his own use" was placed in the act because one's use of a controlled substance is only a mis-

demeanor whereas possession for any other purpose is a felony.

The evidence from which a jury might have drawn an inference that Bedell had prepared *or* compounded marijuana for his own use came primarily from the sheriff and his deputy. They found: a pillowcase containing marijuana in the closet in the southwest bedroom of his home; a glass jar and a plastic box, both containing marijuana cigarette butts (the cigarettes had been smoked) under Bedell's bed; and a paper sack containing marijuana on a bedroom closet shelf. The fact that there were cigarette butts in some containers along with the loose marijuana in others certainly constituted evidence that would justify a belief that Bedell had "prepared" marijuana. When considered in the light of the fact that the cigarettes had been smoked, the inference that Bedell had prepared marijuana for his own use was certainly reasonable.

The jury found Bedell guilty of manufacturing marijuana. It had been instructed that "manufacture" included "preparation" or "processing". It had also been instructed that "manufacture" means production, preparation, propagation, conversion or processing and includes any packaging or repackaging of the substance. It was not told that preparation of the substance by an individual for his own use is specifically excluded.

Since there was evidence that Bedell had prepared marijuana for his own use, the jury should have been told that this did not constitute manufacture. Consequently, the trial court erred in refusing appellant's requested Instruction #10.

Reversed and remanded for the error indicated.

HARRIS, C.J., and GEORGE ROSE SMITH and JONES, JJ., dissent.

J. FRED JONES, Justice, dissenting. I do not agree with the majority opinion in this case. It is my opinion the trial

court did not err in refusing to give the appellant's instruction No. 10.

As pointed out in the majority opinion, the Uniform Controlled Substances Act, Ark. Stat. Ann. §§ 82-2601—82-2638 (Supp. 1973), is an overall Act pertaining to all of the many controlled substances including marijuana. As I read § 82-2601 (m) its interpretation is plain. "Manufacture" means either the production, the preparation, the propagation, the compounding, the conversion or the processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction, etc. The controlled substance is the object of the manufacture by any one or combination of these processes.

I am unable to read from the evidence in this case that the appellant was engaged in the manufacture of a controlled substance through the process of preparation or compounding. The controlled substance, marijuana, is a plant and is simply not manufactured by preparation or compounding. It is manufactured by production and Ark. Stat. Ann. § 82-2601 (u) (Supp. 1973) states: "'Production' includes the manufacture, planting, cultivation, growing or harvesting of a controlled substance." That was what the appellant was charged with and was convicted of. The exception set out in § 82-2601 (m) "except that the term [manufacture] does not include the *preparation or compounding of a controlled substance by an individual for his own use. . .*" (emphasis added) simply does not apply to growing marijuana.

Bedell was not charged in this case with the possession of marijuana for any purpose. The evidence that he even possessed marijuana inside his home was offered for the purpose, and the sole purpose, of showing his connection with the marijuana that was still growing in, and had been harvested from his fields. My main reason for dissent in this case is stated by the majority as reason for their reversal. The majority opinion says:

"The evidence from which a jury might have drawn an inference that Bedell had prepared *or* compounded marijuana for his own use came primarily from the

sheriff and his deputy. They found: a pillowcase containing marijuana in the closet in the southwest bedroom of his home; a glass jar and a plastic box, both containing marijuana cigarette butts (The cigarettes had been smoked) under Bedell's bed; and a paper sack containing marijuana on a bedroom closet shelf."

The majority then say that the fact there were cigarette butts in some containers along with loose marijuana in others, certainly constituted evidence that would justify a belief that Bedell had "prepared" marijuana. As I view this case, the mere fact that the jury might so find, as the majority indicate, was a better reason for not giving appellant's instruction No. 10 than it was for giving it. The marijuana in this case had already been grown and harvested and the manufacturing process by production had been completed before it was placed in the pillowcase and paper bag and stored in the appellant's home. All that was left for the appellant to do was lie in bed and enjoy the fruits of his labor. The cigarette butts found in the jar and the plastic container under appellant's bed, to me, were simply evidence that he had been smoking in bed and had not emptied his ashtrays. Certainly it was no evidence he was manufacturing marijuana by preparation or compounding. It was only evidence that he had harvested some of his marijuana crop and had produced smoke from the marijuana he had grown and harvested.

Apparently the majority feel that unless the appellant smoked the entire marijuana plant, stalk, roots, leaves, seed and all, the jury could have reasonably found he prepared and compounded, and thereby manufactured, the leaves he did smoke. The harvesting of marijuana and stripping the leaves from the stalk could be considered preparation and compounding as easily as rolling a cigarette from the leaves or placing the leaves in a pillowcase or paper bag; consequently, under appellant's instruction No. 10, he could have argued that he only prepared and compounded his entire marijuana crop for his own use.

Now if Bedell had been charged and tried for manufacturing marijuana by the unusual, if not impossible, process of

preparation or compounding a controlled substance then, perhaps, he would have been entitled to the defense that he only prepared and compounded it for his individual use and had not manufactured it within the meaning of § 82-2601 (m), *supra*, but this was not the case. The trial court throughout the trial of this case admitted the marijuana found in the appellant's home to show the chain of title from the fields to the appellant's home and the evidence was limited to that purpose. The appellant did not testify and he offered no evidence as to his intended use of the marijuana found on his farm or in his home.

I would affirm the judgment.

HARRIS, C.J., and GEORGE ROSE SMITH, J., join this dissent.