Jack SANDERS v. STATE of Arkansas

CR 78-48                                    572 S.W. 2d 397

Opinion delivered October 23, 1978
(In Banc)
[Rehearing denied December 20, 1978.]

434

*Dale S. Braden,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Jesse L. Kearney,* Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. Jack Sanders was convicted of the manufacture of a controlled substance in the Logan County Circuit Court and sentenced to ten years in the Department of Correction.

The narrow issue presented to us on appeal is whether Jack Sanders' garden was protected from a warrantless search. We find that it was and reverse the judgment of the trial court.

Several state and local police officers proceeded to Sanders' home, which is a house trailer located on a tract of land in Sorghum Hollow, east of Midway, in Logan County. Sanders has on his place some junk automobiles and claims to be in the salvage business; otherwise, his place is an ordinary rural homeplace.

Sanders was in his yard next to his house trailer when the officers arrived. He was served with a search warrant and the officers proceeded to search the premises. According to one of

the state policemen, ". . . we found approximately fourteen hundred marijuana plants in his garden, or what appeared to be a garden."

The sheriff, in answer to questions, described where the marijuana was found:

Q. Was there anything else growing there with it?

A. Well, I believe he had a garden there, and I think there was some corn.

Q. It was growing in the garden with some corn, and maybe some other vegetables?

A. Yeah, I think that's right.

Q. Did you have to go through a fence to get there?

A. I think we went through a fence when we drove the vehicles in there, we had to go out a little ways from the trailer and come through.

Sanders' garden, according to the evidence presented during the suppression hearing, was located some 100 to 200 yards behind his house trailer. A fence separated the house trailer from his garden. The garden contained corn, tomatoes, onions, radishes and the marijuana plants. There was a water hose that ran from the house trailer to the garden.

The question presented at a pretrial hearing on a motion to suppress the evidence went mostly to the validity of the search warrant. Sanders' place was searched pursuant to a search warrant, which the court had no difficulty in finding invalid. The court concluded:

. . . However, it is the Court's opinion that the protection of the constitution as to unreasonable search does not extend to fields or *gardens* or things of that nature, and does not believe it was necessary in order to make the search to have any search warrant at all. . . . [Emphasis added.]

The court was wrong in its conclusion that a garden is necessarily the same as an open field and, consequently, may be searched without a warrant or for other good legal cause.

There is a line of cases that permits an open field to be searched without a warrant. In *Wyss* v. *State,* 262 Ark. 502, 558 S.W. 2d 141 (1977), a truck was searched approximately a mile from a residence. In *Bedell* v. *State,* 257 Ark. 895, 521 S.W. 2d 200 (1975), a search took place in or near the middle of a 360 acre unenclosed tract. Apparently a residence was located near one edge of the tract. *Ford* v. *State,* 264 Ark. 141, 569 S.W. 2d 105 (1978), (mandate stayed pending petition for writ of cert., Sept. 18, 1978), a search was conducted of an open field on which was located no residence at all. These cases were legitimately cases of an open field search. In a similar, but not controlling case, we suppressed evidence found in an open field where entry was gained through the curtilage and information was obtained in the curtilage leading officers to contraband in an open field. *Durham* v. *State*, 251 Ark. 164, 471 S.W. 2d 527 (1971).

Property seized that is located on one's person, at one's residence, or within the "curtilage" surrounding the residence may not be seized without a search warrant, or pursuant to other legal means.

One's dwelling and curtilage have consistently been held to be areas that may normally be considered free from government intrusion. *Durham* v. *State, supra.* A search warrant, or other proper legal cause, would be required for law enforcement officers to gain entry to one's dwelling and curtilage. Normally a garden is included within the curtilage.

Black's Law Dictionary (Fourth Edition) defines curtilage as follows:

> The curtilage of a dwelling-house is a space, necessary and convenient and habitually used for the family purposes and the carrying on of domestic employments. It includes the garden, if there be one, and it need not be separated from other lands by a fence.

A somewhat more expansive definition of curtilage may be found in 68 Am. Jur. 2d, § 19, at page 676:

> It has been said that the curtilage of a dwelling is a space necessary and convenient, habitually used for family purposes and for the carrying on of domestic employment; it is the yard, garden, or field which is near to and used on connection with the dwelling. Accordingly, a barn has been held to be within the curtilage of a house although it was 70 to 80 yards away and surrounded by a fence. And a barn has been held to be within the curtilage of a dwelling house on a small farm, where there were tracks of vehicles and footprints leading both to the house and to the barn, and there was a driveway between the barn and the house.

The State's argument that this was an open field search is inconsistent with the action of the officers and the physical facts in this case. First, they did not attempt to conduct an open field search. They attempted to search Sanders' premises pursuant to a warrant that was later declared invalid. The first witness called by the State called it a garden — not an open field.

Essentially, the State is using the open field argument as a crutch to shore up an otherwise illegal search. The officers were right the first time — a warrant was needed because the plot was Sanders' garden, next to his dwelling.

The distance between the garden and the dwelling, and the amount of vegetables as compared to the amount of marijuana in the plot are not controlling in this case. Clearly it is too late to attempt to change the physical facts to justify this search on the basis of such theoretical and interesting, but unconvincing arguments.

Therefore, we conclude that the trial court was in error in ruling that the garden was an open field, reverse the judgment of the trial court and remand the matter for a new trial.

Reversed and remanded.

Harris, C.J., and Fogleman and Byrd, JJ., dissent.

Conley Byrd, Justice, dissenting. The majority in making the area searched to come within its definition of a "garden" ignore the testimony in the record including the pictures — *i.e.,* plaintiff's Exhibits Nos. 1, 2, 3, and 5. Officer Ed Wolfe with the Arkansas State Police at page 33 of the record was specifically asked:

"Q. At the time you got there were you looking in the direction where these things were located? Would they have been visible to the naked eye?

A. Right, if you had been looking in the general direction they would have been visible.

Q. They were not within any enclosure of any sort, or high fence or anything like this?

A. No, sir, half of them wasn't.

Q. You would call it sort of an open field?

A. Yes, it would have been an open field; one row of corn in the middle, and an open field."

Sheriff Rufus Nichols with reference to the location of the marijuana at page 45 of the record testified as follows:

"Q. Was this marijuana that was growing, was it out in the open; and by open, I mean was there any fences, big high fences, or anything obstructing your vision?

A. No, there wasn't any fences.

Q. Would you refer to it as being in an open field?

A. Well, it was in a field, I'd say south of his home, or southwest."

In addition to the foregoing, appellant introduced defendant's Exhibit # 1 (attached hereto as an appendix) and in

doing so readily admitted that there was a pond between his trailer and the growing marijuana that is not shown on the exhibit. At page 57 of the record appellant testified as follows, to-wit:

"Q. But except for the barbed wire fence, it is just an open field?

A. Yes. Well, I put up a few wires across it, and had no trespassing signs all around. My cars was up here, and I had a lot of trouble with people stealing."

While I admit that a true garden would ordinarily fall within the confines of what the ordinary person would consider the curtilage of his home, I submit that to call the one row of corn and the few vegetables here grown among the ten rows of marijuana anywhere from 200 to 300 feet in length a garden bastardizes the plain meaning of the term garden even within the definitions of a garden set out in the majority opinion. As pointed out in *Romano v. Thrower*, 261 Ala. 361, 74 So. 2d 235 (1954), the fact that vegetables are grown in an area for a money crop as distinguished from personal use does not constitute the area a "garden." The definitions of a garden cited by the majority and taken from Black's Law Dictionary and 68 Am. Jur. 2d at page 676 both require that the space be used for family purposes. Whether the appellant was raising the 1400 marijuana plants here (a pick-up truck load) for family purposes or for commercial purposes was certainly a fact issue for the trial court and I cannot say that his finding could be said to be against the totality of the evidence.

Neither can the majority rely upon the fact that the search here was part of the fruit of the poisonous vine. Our cases hold that one who must rely upon that theory to suppress evidence has the burden of showing that the illegal search of the curtilage furnished a clue for the open field search, *Walton & Fuller v. State*, 245 Ark. 84, 431 S.W. 2d 462 (1968). No such evidence was here shown.

The quote of the trial court set out in the majority opinion would lead one to believe that the trial court considered the area in question a garden. I consider the quote to be tak-

en out of context. The statements of the trial court are hereinafter set out as follows:

". . . You cannot get a search warrant now for a house and then search a garage, or any other appurtenance to the house. So it has been extended to not only the house, but the judicial interpretation includes all other buildings. You are protected from a search without having a valid warrant. However, it is the Court's opinion that the protection of the constitution as to unreasonable search does not extend to fields or gardens or things of that nature, and does not believe it was necessary in order to make the search to have any search warrant at all. So, regardless of the validity of the search warrant, the Court believes that the field itself is not protected from a search without any kind of a search warrant. So you have raised some very interesting points, and also the search warrant does not describe what is to be searched other than actually the trailer itself. But in spite of that, Mr. Braden, the Court does not feel like the constitution affords this type of protection to a search of a field, but only to homes or buildings, but not to fields. So the Court is going to overrule your motion to suppress, and hold that even if the search warrant here is invalid then the officers would have a right to make a search without any search warrant at all. Anything obtained from the field would be admissible into evidence, and the Court will note your exceptions to the Court's ruling."

For the reasons stated, I respectfully dissent.

HARRIS, C.J., and FOGLEMAN, J., join in this dissent.

# APPENDIX

# DEFENDANT'S EXHIBIT NO. 1