Jack L. GUSTAFSON, Sr. *v.* STATE of Arkansas

CA CR 79-48                           593 S.W. 2d 187

Opinion delivered December 5, 1979
Released for publication January 23, 1980

*Duncan & Davis*, for appellant.

*Steve Clark*, Atty. Gen:, by: *Ray Hartenstein*, Asst. Atty. Gen., for appellee.

M. STEELE HAYS, Judge. The appellant was charged with burglary and theft of property. Prior to trial, a hearing was held on the appellant's motion to suppress. His motion was denied, and the case proceeded to trial where the appellant was acquitted on the burglary charge but found guilty of theft of property. The jury sentenced the appellant to ten years imprisonment and fined him $3,000. He appeals from the judgment.

Appellant's first contention is that the trial court erred in failing to suppress the evidence seized in a warrantless search and seizure. Testimony during the hearing reveals that officers went to appellant's apartment after an investigation concerning stolen CB equipment led to appellant's son's house. The officers and Mr. Jay Petray, the owner of the stolen equipment, were told by the appellant that he had no knowledge of his son's possession of the stolen equipment. However, Mr. Petray noticed an antenna on top of appellant's apartment. Consequently, the officers asked if the appellant had any CB equipment and also asked if they could search the apartment. Appellant told the officers that he had company and to come back later.

At this point, the officers decided to obtain a search warrant. One of the officers left to obtain the warrant while Sheriff Vaughn and Mr. Petray remained near the premises to keep the apartment under surveillance. The two then observed the appellant come out of the apartment. Sheriff Vaughn testified that he was carrying an armload of "stuff" and was running with it. They watched as appellant went through the garden located behind the apartment and into a wooded area where he placed the equipment. Sheriff Vaughn and Mr. Petray went to the area where the articles were hidden. Petray identified the articles as the CB equipment stolen from his store, and the appellant was arrested.

We cannot agree with the appellant's contention that this was an unreasonable search and seizure under the fourth amendment. *Coolidge* v. *New Hampshire*, 403 U.S. 442 (1971), requires that inferences which reasonable men draw from evidence should be drawn by a neutral and detached magistrate. This is required because one should feel secure

from governmental intrusion while in his dwelling or other places where he has a reasonable expectation of privacy.

The appellant cites *Sanders* v. *State*, 264 Ark. 433 (1978), as supporting authority for the rule that one's dwelling and curtilage have consistently been held to be areas that are considered free from governmental intrusion. A garden has been considered a part of one's curtilage. *Durham* v. *State*, 251 Ark. 164, 471 S.W. 2d 527 (1971); *Sanders, supra*. However, the facts in *Sanders* are clearly distinguishable from this case. In *Sanders*, the officers had gone to appellant's trailer house for the purpose of searching his dwelling pursuant to an invalid search warrant. Subsequently, they went behind his trailer, crossed a fence, and seized 50 marijuana plants they found in a garden.

In the instant case, the officers went to appellant's apartment merely to ask some questions. They became suspicious after seeing a CB antenna on his roof. They seized the equipment after they watched the appellant run out of his apartment and dump it *in a wooded area behind the garden.*

A search of open land without a warrant is permissible. *Hester* v. *United States*, 265 U.S. 57 (1924); Rules of Criminal Procedure, Rule 14.2 (1976). The Arkansas Supreme Court has held that wooded areas are open land, *Bedell* v. *State*, 257 Ark. 895, 521 S.W. 2d 200 (1975); even when the land in question belonged to the appellant, *Wyss* v. *State*, 262 Ark. 502, 558 S.W. 2d 141 (1977). We believe that the appellant had no reasonable expectation of privacy in the wooded area behind his apartment and this is not within the purview of one's "curtilage" as defined in *Sanders, supra*. Hence, the trial judge was correct in his denial of appellant's motion to suppress.

Appellant's second contention is that the trial court abused its discretion in denying appellant's motion for mistrial. The motion was made after the prosecuting attorney, in his closing argument, made statements to the jury which, appellant contends, were highly prejudicial. Previously, in the appellant's closing argument, the defense counsel had commented on the credibility of two of the State's witnesses. In response to this, the prosecutor stated:

But, I think you ladies and gentlemen know, in matters of common expertise, that in the sewer of crime the good people don't go only the rats, and the rats talk to each other and the rats commit crimes together. (T. 193, 194)

Appellant also objected to the prosecuting attorney's closing argument in the sentencing proceeding. Prior to this time, defense counsel had attempted to rebut the State's evidence of prior convictions by stating that the date of the last conviction was 24 years ago and that "a lot of things have happened. since 24 years ago." The prosecutor, in response to this statement, commented to the jury:

I suggest to you that there has been a lot of things that happened since then, as evidenced by this trial, and others, and I leave it to your speculation as to what others may be, that we don't have here today. (T. 215)

The trial judge sustained both objections by appellant, instructed the jury to disregard the prosecutor's reference to certain persons as "rats," and instructed the prosecutor to stay inside the record. Appellant moved for a mistrial on both statements and was overruled.

We agree with the appellant that these statements by the prosecutor are highly improper. However, the granting of a motion for mistrial is an extreme remedy and has largely been within the province of the trial court. *Gammel and Spann* v. *State*, 259 Ark. 96, 531 S.W. 2d 474 (1976); *Hill* v. *State*, 255 Ark. 720, 502 S.W. 2d 649 (1973); *Johnson* v. *State* 254 Ark. 293, 493 S.W. 2d 115 (1973).

As was stated in *Simmons* v. *State*, 233 Ark. 616, 346 S.W. 2d 197 (1961):

This court has repeatedly observed that the prosecuting attorney acts in a *quasi* judicial capacity and that it is his duty to use all fair, honorable, reasonable, and lawful means to secure a conviction of the guilty in a fair and impartial trial.

As a general rule, there are three types of improper state-.

ments made by a prosecuting attorney: improper, prejudicial, and prejudicial per se. [See Hall, *The Bounds of Prosecutorial Summation in Arkansas*, 28 Ark. L. Rev. 55 (1974).] Improper statements do not lead to reversal but should be avoided on ethical grounds. Prejudicial statements will lead to reversal unless it is harmless error, and prejudicial per se statements invariably lead to reversal. The permissible bounds of prosecutorial summation will depend on the various facts and circumstances of each case. (For the general rule pertaining to prosecutorial summation see ABA Standards for Criminal Justice, *The Prosecuting Function* § 5.8 (1971).)

The general rule is that the prosecutor may not assert the defendant's character is questionable where there is no adequate justification in the evidence. However, where the prosecutor has improperly demeaned the defendant, an admonition by the trial court may be adequate. Hence, in *Henshaw* v. *State*, 67 Ark. 365, 55 S.W. 157 (1900), an admonition by the trial court to the jury when the prosecutor referred to the defendant as a "jailbird" was held sufficient. Also, in *Johnson* v. *State*, 254 Ark. 293, 493 S.W. 2d 115 (1973), the Supreme Court upheld a conviction of the appellant on counts of burglary and grand larceny, stating that an admonition by the trial judge was sufficient when the prosecuting attorney suggested that the defendant's plea of not guilty was an insult to the jury's intelligence as to warrant double punishment. The court stated that for a mistrial to be warranted, it must appear that justice can not be served by continuation of the trial.

In this case, we can not say that the prosecutor's statements were so highly prejudicial as to warrant a mistrial. We regard the prosecutor's statement as highly improper, but we conclude that the admonition by the trial court was adequate to offset the impropriety. We are confident that jurors will not take such unprecedented comments made by the prosecutor into consideration and would not be inflamed or prejudiced by such, particularly where the trial judge has expressed his disapproval. Moreover, where the opposing counsel has made credibility an issue, the bounds of permissible argument on that issue are considerably broader. *Tomlinson* v. *United States*, 93 F. 2d 952 (1937).

As to the second statement made by the prosecutor, we again do not approve such comments but hold that an admonition by the trial judge was sufficient. These comments were made during the sentencing proceedings after a guilty verdict had been rendered. It is a well settled rule in Arkansas that the trial judge has wide discretion in determining the prejudicial effect of counsel's closing arguments to the jury. *Murchison* v. *State*, 249 Ark. 861, 462 S.W. 2d 853 (1971); *Peters* v. *State*, 248 Ark. 134, 450 S.W. 2d 276 (1970); *Fisher* v. *State*, 241 Ark. 545, 408 S.W. 2d 894 (1966); *Head* v. *State*, 221 Ark. 213, 252 S.W. 2d 617 (1952). The trial court has the opportunity to observe its prejudicial impact upon the jury, and its decision will not be reversed unless there has been an abuse of discretion. We do not believe that the appellant was unduly prejudiced and therefore hold that the trial court properly denied appellant's motion for a mistrial.

Appellant's third point for reversal is that the trial court erred in unduly limiting appellant's closing argument. The contention is based on a denial by the trial judge to allow the appellant's counsel to argue that the testimony of a witness for the State, Officer Reynolds, was for impeachment purposes only and not as substantial evidence. However, appellant voiced no objection when the witness testified nor did he request that a limiting instruction be given to the jury. Only after the jury had rendered a guilty verdict and was deliberating on the sentence did he object. We believe that the objection was untimely and was properly overruled. *Golden* v. *State,* 265 Ark. 99, 576 S.W. 2d 955 (1979); Uniform Rules for Circuit and Chancery Courts, Rule 13.

Lastly, appellant argues that the trial court erred in allowing the prosecutor to question the State's witness, Mr. Alan Ophof, regarding the length of time an inmate must serve before becoming eligible for parole. We agree with appellant that ordinarily this is not an area which can be discussed either in argument or interrogation; however, appellant's citations do not reach the issue as presented in the context of this case, for here, counsel for appellant first broached the subject by the questions which he posed on cross-examination. At several points on cross-examination, counsel asked questions aimed at showing that the witness's

testimony was given in consideration of a promise of early parole. This was not improper cross-examination, but it does, to some extent, open the door to questions from the prosecution to refute the inference. *Allen* v. *State*, 260 Ark. 466, 541 S.W. 2d 675 (1976). Without retreating from the general rule in criminal cases that parole procedures are not proper areas of either comment or inquiry where the purpose is to influence the sentence, we find that the trial court did not err in permitting some counter interrogation by the prosecutor on re-direct examination. It can also be said that the objection failed to reach the character of the question which appellant now contends was offensive, that, its *prejudicial* influence upon the sentence. Yet the objection made was to its *relevancy*. This seems to be drawing a fine line and perhaps so; but it is settled law that for the trial court to have committed reversible error, it must be said that timely and accurate objection was made, so that the trial court was given the opportunity to correct such error. *West* v. *State*, 255 Ark. 668, 501 S.W. 2d 771 (1973); *Callaway* v. *State*, 258 Ark. 352, 524 S.W. 2d 617 (1975); *Ray* v. *Fletcher*, 244 Ark. 74, 423 S.W. 2d 865 (1969).

Affirmed.

HOWARD, J., dissents.

GEORGE HOWARD, JR., Judge, dissenting. Unlike the majority, I think there is merit to appellant's argument that the trial judge committed reversible error in permitting a State's witness, Allen Ophof, to testify about the mechanics of the Arkansas Parole System in general and the application of the rules, in particular, to Ophof's sentence to the Department of Correction. The following is the exchange that took place between the prosecuting attorney and Ophof, over the objections of the appellant:

By Mr. Farris:

Q. And you went down there and how long did you spend in the penitentiary?

A. Seven months and eight days.

Q. Isn't it pretty common knowledge that if you mind your manners when you go down there and stay on your P's and Q's. . . .

By Mr. Davis:

Objection, Your Honor, this is irrelevant to this proceeding.

By the Court:

I haven't heard the question yet, Mr. Davis. Don't answer Mr. Ophof, until I rule. You may continue.

By Mr. Farris:

What is the objection?

By Mr. Davis:

It is irrelevant, to this proceeding.

By Mr. Farris:

Well, the reason it is not irrelevant, Your Honor, is he tried to leave the inference with the jury that this man was paroled solely because he gave a statement to Sgt. Reynolds and I am trying to show that that is not the case.

By the Court:

You may continue.

By Mr. Farris:

Q. You have been down then at the penitentiary and seen just about how the parole law works, haven't you?

A. Yes, Sir.

Q. And don't you know that you end up, if you are good

and don't get in any fights and put in solitary or anything like that, you spend a sixth of your time if you are a first offender, is that right?

A. Yes, Sir.

Q. So if a jury gives you a sentence of say three years, you do six months.

Appellant argues, logically and persuasively, that the jury was told, in effect, that whatever sentence is imposed, appellant would be released upon serving a fractional part of the sentence and, therefore, in order for appellant to be confined to the penitentiary for any appreciable length of time, the jury should assess a stiff sentence. Appellant claims that he was prejudiced by this testimony.

The majority, while recognizing that the testimony was highly prejudicial, avoids the force of appellant's argument by concluding that appellant's counsel invited the testimony when counsel asked Ophof, the State's witness, on cross-examination if Officer Reynolds had promised him an early parole if he (Ophof) cooperated in the case pending against appellant.[1]

While the State was entitled, on redirect examination, to inquire of Ophof whether a deal had been offered Ophof, I submit the trial court abused its discretion in permitting Ophof to give a comprehensive analysis of the State's parole program, before appellant's jury, when such testimony was not relevant to any issue. Moreover, I do not agree that the testimony was invited by the line of inquiry made by appellant's counsel. Appellant's inquiry was proper on cross-examination; and the majority recognizes that it was proper.

For the sake of argument, assuming that appellant invited the extended excursion into the policies and practices of Arkansas' parole system, the action of the trial court in not sustaining appellant's objections is still a manifest abuse of its discretion.

---

[1] Ophof denied that he ever cooperated with the State in the prosecution of the charges against appellant.

Under Rule 403 of the Uniform Rules of Evidence, it is provided:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . .

The trial court was duty bound to sustain the objections of appellant to the testimony upon finding that the prejudicial effect outweighed any probative value that might be derived from Ophof's testimony. The record is silent as to any compliance, on the part of the trial court, with the provisions of Rule 403. Aside from the majority's recognition of the prejudicial effect of such testimony, our Supreme Court, in *Thackston* v. *State*, 205 Ark. 493, 169 S.W. 2d 130 (1943), has indicated the prejudicial effect of testimony pertaining to the policies and practices of the parole system.

In *Thackston* v. *State*, supra, the prosecuting attorney argued to the jury that it ought to fix appellant's sentence at twenty-one years and stated: '. . . you must bear in mind that he is entitled to parole when he has served a third of his time . . . if he makes a good prisoner.'

The trial court immediately stated:

'The court will sustain the objection and say to you gentlemen that you mustn't consider that for any purpose in arriving at your verdict. That is something you are not concerned with and shouldn't be considered by you whatever.'

While our Supreme Court affirmed appellant's conviction, who had received the minimum punishment under the law, our court said:

There can be no doubt that the effect, if any, of this argument was eliminated by the court's prompt, emphatic and vigorous admonition to the jury that it must not consider this remark for any purpose.

In the instant case, appellant received the maximum sentence on the charge for which he was found guilty. Moreover, the trial court gave no cautionary instructions to the jury.

It is plain, from a careful consideration of the testimony offered by Ophof detailing the parole system, the testimony was calculated to influence the jury against a recommendation of clemency. Appellant was prejudiced indeed. Accordingly, I dissent.