Marlon Glenn HALLMAN and Tywanna Faye
MARTIN *v.* STATE of Arkansas

CR 78-165                                          575 S.W. 2d 688

Opinion delivered January 22, 1979
(In Banc)

*Robert S. Gunter,* of *Southern, Gunter, Matthews & James,* for appellants.

*Bill Clinton,* Atty. Gen., by: *Joyce Williams Warren,* Asst.

Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. This is an appeal by Tywanna Faye Martin and Marlon Glenn Hallman who were convicted in a joint trial of capital murder and kidnapping. Four individuals were charged with the crimes, and three were tried together. Henry Jewel Harris was also a defendant in this case but is not an appellant. Martin and Hallman were each sentenced to life imprisonment without parole for capital murder and twenty years for kidnapping.

On appeal they allege three errors, which we find without merit. We have examined the record for other reversible errors, as we are required to do in such cases, and find no such errors. Consequently, the judgment is affirmed.

The state's case was that these appellants, with two others, kidnapped Calvin Earl Smith at Sambo's Restaurant on Geyer Springs Road in Little Rock during the early morning hours of September 4, 1977, beat him and killed him by drowning in the Arkansas River near a pier located on the river in North Little Rock.

At first, all four defendants were charged with the kidnapping of Smith; Hallman and Martin were arrested on the 4th day of September, 1977. They were arraigned in municipal court on the morning of September 6, 1977. Later, on the 10th day of September, 1977, a body was found; according to the expert medical witness, who testified for the State, it was the body of Calvin Earl Smith who died by drowning.

An additional charge of capital murder in furtherance of the commission of kidnapping was filed against these defendants on the 3rd day of November, 1977.

Each of the three defendants testified at the trial below, and their statements do not vary a great deal. Martin and Hallman were living together in an apartment on East 9th Street in Little Rock. On the evening of September 3, 1977, they returned to their apartment and discovered that some of their furniture had been stolen. According to them, a

neighbor, Annette Wilson, told them that several men had burglarized their apartment and one of them was Smith. They proceeded that evening with the two other defendants to locate Smith. They found him and followed him to Sambo's Restaurant. Smith was then taken in a vehicle by these four parties to be questioned about the location of the furniture.

It is undisputed that they drove Smith back to their apartment and the neighbor, Annette Wilson, saw them outside. The appellants said Wilson identified Smith as one of the burglars. She disputed this on the witness stand. Wilson said she was called out of her house and saw Smith in the back seat of the automobile sitting beside Harris. She said Smith appeared to be beaten up. She testified she did not see either of the appellants strike Smith.

Wilson also denied in her testimony that she told either of the appellants at any time that Smith had participated in the burglary.

The defendants all left the vicinity of East 9th Street, drove to North Little Rock and parked near the Arkansas River. Smith was struck several times. Hallman denied that he ever struck Smith but said the other two male defendants did strike Smith several times. Smith was taken to the river by the three male defendants and Martin remained in the vehicle. According to Hallman there was some conversation at the river about the furniture, and when he saw it was a futile effort to regain it, he turned his back to leave; as he did he heard a splash. He said he looked around and saw Smith in the water swimming toward the bank. Hallman denied striking Smith or pushing him into the water. Harris admitted that he struck Smith several times, and admitted that he had a gun which he said slid out from under the seat of the vehicle. It was not disputed that the gun was made available by Martin who claimed it was her brother's gun. Harris said that the fourth party, who was not tried in this case, pushed Smith in the river. He said that when he left, Smith was in the river swimming toward the bank.

All the witnesses testified that Martin stayed in the vehicle and did not observe what happened at the river.

The medical expert, while finding that Smith died from drowning, could not testify whether Smith had been beaten because he said the body was decomposed. He stated, however, there were no broken bones.

Statements were taken from Martin, Hallman and Harris and introduced into evidence. While they did not substantially vary as to the series of events, they, no doubt, contained incriminating evidence which was considered by the jury. Mostly, it was the testimony of the appellants themselves that damaged their cause. Martin admitted that the gun was her brother's and she took it along. She said she knew Smith would be beaten. Hallman said he observed Smith being struck several times by the other two male participants. Hallman said they went to North Little Rock because Smith had told them he would take them to the furniture. But after he got there, he wouldn't, or couldn't, show them where the furniture was. He said Smith was beaten so he would tell where the furniture was. All of the parties denied that they kidnapped Smith and, in fact, testified that Smith accompanied the four individuals voluntarily. They also denied that they had killed Smith or knew that he was dead.

The allegations of error are threefold: The trial court erroneously denied the appellants separate trials; all statements made by the appellants to the authorities after their first arraignment should have been suppressed (each made three); and, Martin's conviction cannot be supported by substantial evidence.

First, the appellants argue they were entitled to separate trials as a matter of right according to Ark. Stat. Ann. § 43-1802. That statute was superseded by Rules of Crim. Proc., Rule 22 (Repl. 1977). Rule 22.3 provides:

. . .
(b) The court, on application of the prosecuting attorney, or on application of the defendant other than under subsection (a), shall grant a severance of defendants:

(i) if before trial it is deemed necessary to protect a defendant's right to a speedy trial, or it is deemed appropriate to promote a fair determination of the guilt or innocence of one (1) or more defendants; or

(ii) if during trial, upon consent of the defendant to be severed, it is deemed necessary to achieve a fair determination of the guilt or innocence of one (1) or more defendants. . . .

The appellants had been granted a separate trial. However, after the State waived the death penalty, the trial judge rescinded that order and ordered joint trials. A matter of severance, or separate trials for multiple defendants, is one within the sound discretion of the trial judge to grant or deny. We will not reverse such a decision unless that discretion is abused. *Legg* v. *State,* 262 Ark. 583, 559 S.W. 2d 22 (1977). We find no such abuse. All statements that were made by the defendants in this case were altered to delete any reference to co-defendants. *Byrd* v. *State,* 251 Ark. 149, 471 S.W. 2d 350 (1971); Rules of Crim. Proc., Rule 22.3 (Repl. 1977).

The defense of these appellants was not antagonistic. In fact, all the defendants testified and cross-examination permitted the appellants to refute any adverse testimony to their cause. *Bell and Walker* v. *State,* 258 Ark. 976, 530 S.W. 2d 662 (1975). Nobody testified that Hallman pushed Smith into the water or drowned him. According to his own admission, he was present as an actor throughout the episode. Nobody denied that Martin remained in the vehicle and did not go to the water's edge where the critical events which preceded the drowning occurred.

Consequently, we find no error of abuse of discretion.

The appellants argue that any statements they made to police officers after their arraignment should be excluded because they were taken after counsel was retained and in the absence of counsel.

It is not disputed that the defendants had counsel when they were arraigned on the 6th of September, 1977. Two statements were taken from Martin after the arraignment,

one on the afternoon of the 6th of September, 1977, and another on the 13th of September, 1977. Two statements were taken from Hallman on the 4th day of September, 1977, and one on the 13th day of September, 1977. While the statements did not directly admit any guilt as to kidnapping or murder, there is no doubt that they were used by the State as circumstantial evidence of guilt and used to the appellants' detriment in cross-examining the appellants when they took the witness stand.

The policemen who took statements from the appellants testified that they did not know when the statements were taken that either had counsel. They said that a waiver of rights form was signed in each instance before a statement was taken. Waiver of rights forms were produced which appeared to have the signatures of the appellants.

Martin did not ever testify that she asked for counsel at any time or told the police that she had counsel. Hallman said that when his statement was taken on the 13th day of September, 1977, he asked for the presence of his counsel and was denied that request as well as a request to make a phone call. He said that he was threatened in that the officers said they would place charges against him for murder if he didn't make a statement.

The police officers testified that neither appellant ever asked for counsel, both appellants waived their rights to counsel, signed a form to that effect and made voluntary statements. A woman police officer was present when one of Martin's statements was taken and corroborated the male officers' testimony.

It was shown that both appellants were adults and there was no indication of lack of formal education. In the case of Harris, it developed that he asked for counsel and his counsel was present when one statement was taken from him by one male police officer who took statements from the appellants.

We held in *Rutledge v. State,* 263 Ark. 781, 567 S.W. 2d 283 (1978) that it was not *per se* improper for a policeman to question a suspect outside the presence of counsel on another

charge. In other words, a person can waive the right to counsel in such a situation. While the circumstances of such a statement will be carefully scrutinized by us, and we emphasize carefully, such a statement is not automatically inadmissible and involuntary. In *Escobedo* v. *Illinois*, 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977 (1964), both Escobedo and his lawyer made repeated requests, which the police confirmed, that the lawyer be allowed to consult with Escobedo during interrogation; those requests were denied. That is not the case here. Both police officers denied that they knew that either of the appellants had counsel and there is no evidence to dispute that testimony. Martin did not even refute the officers' statement that she did not ask for the presence of her counsel. Hallman said he did, but his testimony was rebutted by both officers. There was no other evidence offered to refute these officers' statements.

We examine the totality of the circumstances surrounding any statement to determine whether it was voluntarily taken, and having done so in this case, we cannot say the trial court's ruling that the statements were voluntary is clearly erroneous. *Degler* v. *State*, 257 Ark. 388, 517 S.W. 2d 515 (1975).

Finally, Martin argues that she remained in the vehicle, did not strike Smith, was not present at the river's edge, and in effect was not active in the brutality that may have occurred, and she should be acquitted.

She was charged with capital murder in the furtherance of kidnapping. She admitted that it was her furniture that was taken and she started out with these other defendants to find Smith and get it back. She knew there might be violence and she furnished a gun which was used by one of the defendants in a threatening manner. She said it was not loaded. On cross-examination when asked to explain why she provided an unloaded gun when she feared Smith or his friends might have a gun, she remained silent. She went along from the beginning.

The capital murder statute (Ark. Stat. Ann. § 41-1501 [Repl. 1977]) provides in part:

(1) A person commits capital murder if: (a) acting . . . with one or more other persons, he commits kidnapping . . . and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life; . . . .

Criminal liability for conduct of another is explained in Ark. Stat. Ann. § 41-302 (Repl. 1977), which provides:

A person is criminally liable for the conduct of another person when: . . . (2) he is an accomplice of another person in the commission of an offense; . . . .

Further, a person is an accomplice, according to Ark. Stat. Ann. § 41-303(2)(a) and (2)(b) (Repl. 1977), as follows:

(2) When causing a particular result is an element of an offense, a person is an accomplice in the commission of that offense if, acting with respect to that result with the kind of culpability sufficient for the commission of the offense, he

(a) solicits, advises, *encourages,* or coerces another person to engage in the conduct causing the result; or

(b) aids, agrees to aid, or attempts to aid another person in planning or engaging in the conduct causing the result; . . . . [Emphasis added].

According to these laws the jury could have found, and there is ample evidence to support the finding, that Martin was guilty as charged.

We have reviewed the record for any other prejudicial errors as required by Ark. Stat. Ann. § 43-2725 (Repl. 1977) and find none.

Affirmed.