Bob H. GRAHAM *v.* STATE of Arkansas

CA CR 81-29                                    621 S.W. 2d 4

Court of Appeals of Arkansas
Opinion delivered September 2, 1981
[Rehearing denied October 7, 1981.]

*Dodds, Kidd, Ryan & Moore*, by: *Richard N. Moore* and *Judson C. Kidd*, for appellant.

*Steve Clark*, Atty. Gen., by: *Leslie M. Powell*, Asst. Atty. Gen., for appellee.

Tom Glaze, Judge. The appellant was convicted of first degree murder in the shooting death of Charles R. Jacks. Appellant raises five evidentiary issues on appeal.

Appellant first argues that the trial court erroneously denied him the opportunity to prove certain inconsistent statements made by one of the State's witnesses, Gail Hewgley. We disagree. After Jacks' death, Hewgley had been interviewed by Little Rock Detective Larry Dunnington. Dunnington had prepared a typed summary of Hewgley's interview, but it was not signed by Hewgley or Dunnington. It was this summary statement which appellant attempted to

introduce at trial to show prior inconsistent statements attributed to Hewgley.

The rule is established that a witness may not be charged with a third party's characterization of his statements unless the witness has subscribed to them. *United States* v. *Leonardi*, 623 F. 2d 746 (2d Cir. 1980). Here, Hewgley, on one occasion, complained that her copy of her statement did not contain one of the comments read to her by appellant's counsel from Dunnington's summary. She testified that the summary statement was similar and could be the one she gave the police, but she did not remember exactly what she wrote down. In brief, the summary was not in her handwriting or signed by her. Nor was it acknowledged by Hewgley to be her statement. To be admissible, appellant was required to establish the authenticity of the summary statement by the officer who took Hewgley's statement and to show that Hewgley actually made the remarks attributed to her. See McCormick, *Evidence*, § 37 (2d ed. 1972), and *Dickinson Supply, Inc.* v. *Montana-Dakota Utilities Company*, 423 F. 2d 106 (8th Cir. 1970).

Appellant next contends the trial court erred in admitting extrinsic proof of prior inconsistent statements made by another State witness, Charles Sheridan. Officer Dunnington wrote a statement verbatim of Sheridan's oral statement, and Sheridan read, corrected and signed it. Moreover, unlike the Hewgley summary, Dunnington authenticated and established at trial that the statements contained in the summary he prepared were made by Sheridan. This was done before the court correctly admitted the Sheridan statement into evidence.

Thirdly, appellant urges that the trial court incorrectly sustained the State's objection to exclude the opinion of the arresting officer that appellant was "scared to death" at the time of arrest. Appellant contends that Rule 701 of the Uniform Rules of Evidence permits even lay witnesses to describe whether the defendant was angry, nervous or scared. While this may be true, we fail to see how it aids appellant in the relief he seeks. Appellant was convicted of first degree murder. A person commits first degree murder if, with the

*premeditated and deliberated* purpose of causing the death of another person, he causes the death of any person. See Ark. Stat. Ann. § 41-1502(1)(b) (Repl. 1977). To be admissible evidence must be relevant, *i.e.*, evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. See Rules 401 and 402, Arkansas Uniform Rules of Evidence. While appellant's state of mind was relevant at the time of the shooting, we fail to see the relevancy of testimony which depicts his state of mind *after* the shooting occurred. Although decided before adoption of our Uniform Rules of Evidence, the Supreme Court in *Prewitt* v. *State*, 150 Ark. 279, 234 S.W. 35 (1923) upheld the exclusion of testimony concerning defendant's appearance when he arrived at his doctor's office directly after shooting the deceased. The court held that too much time had intervened between the time of killing and when he saw the doctor and opportunity had then been afforded for reflection and dissimulation. Here, appellant testified that after the shooting he got in his van, took off down the alley, went over the Main Street bridge, got off at Washington Street, pulled over and stopped to get himself together and reloaded his gun while he sat there. All of these events occurred after the killing and before the arresting officer found him. Aside from the relevancy of this opinion evidence, the arresting officer testified later, without objection, that "he [appellant] was really scared." Thus, even if the arresting officer's shorthand description of how appellant was acting after Jacks' death was relevant, the record clearly reflects evidence appellant appeared scared. We conclude that the trial court correctly excluded this testimony since it was not relevant, and, indeed, even if it were, the excluded testimony was merely repetitious to that which was later presented by the same witness. See, *Nelson* v. *State*, 257 Ark. 1, 513 S.W. 2d 496 (1974), and *McMillan* v. *State*, 229 Ark. 249, 314 S.W. 2d 483 (1958).

The fourth issue raised by appellant concerns an objection by the State to a question posed by defense counsel to appellant. On appeal, appellant argues that the State at trial sought to show that prior to the shooting, appellant left Jacks and his companion, Bobby Smith, where their car was

parked and went to his van for the purpose of obtaining a gun to later use on Jacks or Smith. Appellant contends that his counsel's question was designed to show that his friend, Charles Sheridan, had remained with Jacks and Smith when appellant went to his van, and he merely returned to where the parties were parked to get Sheridan and to leave. The direct examination of appellant follows:

Q. If Charlie Sheridan had followed you back to your van, what were you going to do at that point?

A. I was going to take —

Prosecutor: Your Honor, I object. I think that is just totally supposition.

The Court: All right. The objection will be sustained.

The appellant made no proffer of evidence pursuant to Rule 103(a)(2) of the Arkansas Uniform Rules of Evidence, which is required unless the question clearly admits of an answer relevant to the issues. Whether a proffer was necessary in this instance is of no moment since we again conclude that appellant's answer would have been repetitive and cumulative, and he was not prejudiced by its exclusion. Although the State's objection was rather general, the trial court may properly exclude evidence if its exclusion is justified on any ground. *Howell* v. *Dowell*, 419 S.W. 2d 257 (Mo. App. 1967). See also McCormick, *Evidence*, § 52, and 88 C.J.S., *Trial*, § 124(b) (1955). Prior to the foregoing colloquy, appellant had testified he thought about Mr. Sheridan being over there (with Jacks and Smith) and appellant was going back to get him. He testified further that because the guys (Jacks and Smith) were giving him a strange reaction, he went over to his van, armed himself and "was going to get Mr. Sheridan and take him and get breakfast." Appellant had clearly expressed his intention, without objection, that he returned to get Sheridan and intended to take him to breakfast. We fail to see how appellant was prejudiced by the exclusion of what appears only to be cumulative or repetitive testimony. *Nelson* v. *State, supra.*

Finally, appellant contends that the State's evidence is insufficient to support the guilty verdict. Specifically, he argues the proof shows the shooting was justified under Arkansas law. Appellant relies in part on Ark. Stat. Ann. § 41-507(1) (Repl. 1977), which provides:

> A person is justified in using deadly physical force upon another person if he reasonably believes that the other person is ... (b) using or about to use unlawful deadly physical force.

Other relevant provisions of Ark. Stat. Ann. § 41-507 (Repl. 1977) as well as § 41-506 appear as follows:

> § 41-507(2). A person *may not* use deadly physical force in self defense *if he knows* that *he can avoid* the necessity of using that force with complete safety:
>
> (a) *by retreating* ...
>
> § 41-506(2). A person *is not* justified in using physical force upon another person *if*:
>
> (a) with purpose to cause physical injury or death to the other person, *he provokes* the use of unlawful physical force by the other person; [Emphasis supplied.]

In reviewing the evidence, we must affirm the lower court's verdict if there is any substantial evidence to support it. *Lunon* v. *State*, 264 Ark. 188, 569 S.W. 2d 663 (1978). In determining if evidence is substantial, we must also view the evidence in a light most favorable to appellee. When doing so, we conclude there is sufficient evidence to support the appellant's conviction of first degree murder and that he was not justified in shooting Jacks. The record reflects evidence to support the following sequence of events:

> Jacks, Smith and two women, Gail Hewgley and Janet Jeffords, met appellant at the Trinity Club. When the foursome decided to leave, appellant claimed Smith owed him some money so appellant followed the group

to their car. Smith did not pay appellant, and Smith said that appellant expressed "he'd fix us." Appellant then went to his van and the four men and women got in Jacks' car. Jacks started his car and began to leave when appellant approached the passenger side of the car and threatened the group with a gun. Jacks then tried to get out of his car but never made it before the gun was fired. Although there was evidence Jacks had a gun, Hewgley, Jeffords and Smith all testified that the appellant threatened them with a gun as they were preparing to leave, and the first shots all came from the passenger side of the car, where appellant was positioned.

The foregoing evidence substantially shows that appellant not only could have avoided returning to the Jacks car, but also he could have allowed the foursome to leave as they were prepared to do. Additionally, the proof is overwhelming that appellant was the first person to wield a gun and to threaten Smith and the others. We, therefore, hold the jury had sufficient evidence upon which to base its verdict of first degree murder and to reject appellant's claim of self-defense and justification.

Affirmed.