Sam **BROWN** and Deborah H. **BROWN** *v.*
**STATE** of Arkansas

CA CR 81-173                                    636 S.W.2d 286

Court of Appeals of Arkansas
Opinion delivered June 9, 1982
[Rehearing denied August 18, 1982.]

*Lessenberry & Carpenter,* by: *Jack Lessenberry,* for appellants.

*Steve Clark,* Atty. Gen., by: *Leslie M. Powell,* Asst. Atty. Gen., for appellee.

TOM GLAZE, Judge. Appellants were each charged and convicted of the manufacture of a controlled substance, marijuana, in violation of Ark. Stat. Ann. § 82-2617 (Supp. 1981).[1] They raise six points for reversal, and we consider each in the order presented by appellants.

## I. THE MOTION TO SUPPRESS SHOULD HAVE BEEN GRANTED.

In this argument, appellants rely heavily on the holding in *Sanders* v. *State,* 264 Ark. 433, 572 S.W.2d 397 (1978), a 4-3 Supreme Court decision. In sum, appellants argue both, or at least one of the two marijuana patches, discovered by law enforcement officers are entitled to Fourth Amendment protection.

From the outset, we must admit that the facts described in *Sanders,* although distinguishable in part, are strikingly similar to those at bar. For the sake of clarity, we first consider the chronology of events which transpired in the instant case.

On May 17, 1980, an employee, Harold Lepel, of the Arkansas State Game and Fish Commission was patrolling a national forest in Newton County, Arkansas. Apparently, there is private land located within the national forest, and during his search for illegal game hunting, Lepel crossed a fence onto private land owned by one of the appellants, Sam

---

[1]Appellants lived as husband and wife although they never had benefit of formal marriage. In this opinion, we refer to appellant Deborah H. Phillips as Deborah H. Brown since she used Mr. Brown's last name.

Brown. Lepel testified that he crossed such fenced areas when he was performing his duties, and that all of the property, public and private, was extremely forested and mountainous. While on Brown's property, Lepel found ten to fifteen marijuana plants growing near an abandoned house trailer. The next day, he reported his find to Ray Watkins, the Newton County Sheriff, and they both returned to Brown's property to examine the marijuana. On this occasion, the Sheriff saw a black hose. He discovered the hose actually began at a water pond and by way of a tee connection it led not only to the small marijuana patch discovered by Lepel but also to a larger marijuana field, located approximately two hundred feet from the smaller patch.

After Lepel and Watkins found the second marijuana field, they went to Jasper, Arkansas, picked up two deputy sheriffs, and proceeded to the appellant's home. Although the testimony is somewhat conflicting as to whether appellants were arrested immediately, Lepel testified that Sheriff Watkins advised Brown that he was under arrest for manufacturing marijuana and then read both appellants their rights. At this point, appellants discussed the two marijuana patches freely and, in fact, led the officers to where the marijuana was located.

The larger patch of marijuana was the closest to appellants' house, some 100 to 150 yards away. A well worn path led down to but did not connect with the large patch. Both patches were located on a second level of terrain not visible from appellants' home, but the roof of the home was visible when standing where the larger patch was located. This larger patch was enclosed by a high fence which contained over 100 stalks of well cultivated marijuana.[2] At the site of the large patch, there was a shed where dried marijuana was stored. Although appellants testified they maintained a "vegetable garden" where the marijuana was located, Sheriff Watkins testified he saw some onions, two or three tomato plants and some beans, all of which were

[2]The testimony of Lepel and Watkins was in conflict as to the fence. Lepel said that a wire fence enclosed the large patch, but Watkins did not remember a fence.

covered and unnoticeable until the marijuana was pulled and removed.

We painstakingly described the foregoing set of events since appellants ardently contend that such facts merit a reversal in view of *Sanders* v. *State, supra.* However, the most that *Sanders* stands for is that an open field may be searched without a warrant whereas a warrant (or other legal means) is required before law enforcement officers can gain entry to one's dwelling and curtilage.

We believe the test we announced in *Gaylord* v. *State,* 1 Ark. App. 106, 613 S.W.2d 409 (1981), is applicable to the case here, *viz.,* whether appellants exhibited a reasonable expectation of privacy covering the area of the search or seizure. Stated another way, the issue is whether the two marijuana patches lay within the appellants' reasonable expectations of privacy. We think not. We find it significant that appellants' house is situated within the boundaries of a national forest and the acreage on which the house sits contains the same foliage and terrain as that within the forest. As Lepel testified, it was customary and necessary to cross fences and private lands when patrolling the public forest area. Moreover, there were no signs evidencing that a person was trespassing on or should keep off the appellants' property. The first, smaller patch of marijuana was near the national forest and it was by virtue of a black plastic hose which was used to water the small patch, that the law enforcement officers discovered the second but larger patch. Even at the site where the second patch was discovered, the officers were in a forested, mountainous area where the next nearest cultivation known to the officers was a quarter of a mile away. Once the officers were led to the second marijuana field by following the hose, they could see the roof of a building on the next level of terrain but could not tell if it was a cabin or a barn. At this point of the officers' investigation, they were unaware that appellants' house was on the next terrain of land. Further, if we accept Sheriff Watkins' testimony, the appellants' "vegetable garden" was not noticeable to the officers so as to indicate the land where the marijuana was found might be a part of some person's

curtilage. Watkins testified he later learned that the land appeared to be owned by appellants.

On these facts, we simply cannot agree that appellants had any reasonable expectation of privacy. On the contrary, we believe they should have fully expected officers, hunters or other passersby to frequent the national forest and, by chance, to venture onto their marijuana operation. Appellants' attempt to bring this case within the curtilage exception noted in *Sanders* v. *State, supra,* cannot be countenanced. We do not believe the Supreme Court in *Sanders* intended to permit a person to invoke the curtilage right to Fourth Amendment protection merely by the planting of vegetables in and about his or her cultivation of marijuana plants. We hold the search by the officers did not require a warrant; under the facts before us, we conclude the motion to suppress was properly denied by the trial court.

## II. THE MOTION FOR CONTINUANCE SHOULD HAVE BEEN GRANTED.

In considering this issue, the law is well settled that the trial court's action will not be reversed absent a clear abuse of discretion amounting to a denial of justice and the burden is on appellants to demonstrate such abuse. See *Russell* v. *State,* 262 Ark. 447, 559 S.W.2d 7 (1977). Moreover, in *Tyler* v. *State,* 265 Ark. 822, 581 S.W.2d 328 (1979), we recognized the rule that the matter of a continuance is within the discretion of the trial court and that not every denial of a request for a continuance violates due process, even if the party is compelled to defend without counsel.

In the instant proceeding, appellants had hired four different attorneys and fired three of them. The third attorney hired was an out-of-state attorney, Roy Gene Smith, who failed to appear at two different trial settings. The fourth attorney had been hired as local, associate counsel to assist Smith. This was done at the urging and prompting of the prosecuting attorney because he complained that his efforts to get the case to trial had been futile.

Prior to the trial on September 8, 1981, Smith had indicated to his local counsel that he was ill and would send a formal written motion to this effect with a doctor's certificate attached. The prosecuting attorney said that he had spoken to Smith and Smith indicated he would be well by the trial date. On the morning of September 8, appellants requested the local counsel to renew Smith's motion to continue and that his services as local counsel would no longer be needed. Smith failed to show at trial nor did he call the trial judge concerning his absence.

At the trial, appellants chose to represent themselves even though local counsel was present. There is no indication that the local attorney could not have adequately and properly proceeded to represent appellants. In fact, it was this attorney's explanation to the court that it was not his choice or position to withdraw but rather appellants were terminating his employment. After appellants terminated their local counsel and decided to represent themselves, we fail to see how they were prejudiced by the trial court's decision to proceed to trial. The trial court is required to consider the public's interest in the prompt disposition of criminal actions. There were sufficient factors existent in this case to warrant concern over the possibility of further delays caused either by appellants' actions or by those of their out-of-state counsel.

### III. THE MOTION FOR A SEVERANCE SHOULD HAVE BEEN GRANTED.

As was true concerning the trial court's action relative to continuances as discussed in point two above, the matter of severance also lies within the sound discretion of the trial judge and will not be reversed absent a showing of an abuse of discretion. *Hallman* v. *State,* 264 Ark. 900, 575 S.W.2d 688 (1979). Rule 22.1 of the Arkansas Rules of Criminal Procedure requires such a motion to be made before or at the close of all the evidence if based upon a ground not previously known. Here, the grounds for the severance motions had been known for at least two months prior to trial. In fact, appellants' cases had been consolidated by the trial court without objection for over a year.

The record reflects that appellant, Sam Brown, did not file his motion until immediately prior to jury selection and Deborah Brown's motion was not filed until immediately before the State called its first witness. Clearly, Deborah Brown's motion was untimely since she waited to raise the severance objection until after the jury was selected and sworn. See *Owen* v. *State*, 263 Ark. 493, 500, 565 S.W.2d 607 (1978). Even if we were to hold (which we do not) that appellant Sam Brown had timely filed his severance motion, we cannot consider this issue relative to Deborah because she, herself, must file the motion before the trial commences. To this effect see *Spillers* v. *State*, 268 Ark. 217, 595 S.W.2d 650 (1980). Aside from the timeliness issue concerning Sam Brown's severance motion, we fail to see how he was prejudiced by the court's denial since Deborah's testimony tended to exonerate him of any illegal knowledge or conduct relative to the two marijuana patches. For these reasons, we affirm the trial court's denial of appellants' motion to sever.

IV. THE TRIAL JUDGE ERRED BY PERMITTING THE PROSECUTING ATTORNEY UNREASON-ABLE LATITUDE IN HIS CROSS-EXAMINATION OF DEBORAH BROWN DURING THE MOTION TO SUPPRESS.

Counsel for appellants on appeal were not representing appellants at any time before or at the trial below. They now, however, attempt to raise this issue on appeal even though there was no objection to the scope of cross-examination at the suppression hearing below. It is well established that this court will not consider an alleged error when it is not presented to the trial court and is first raised on appeal. *Jeffers* v. *State*, 268 Ark. 329, 595 S.W.2d 687 (1980).

V. THE TRIAL JUDGE ERRED BY FAILING TO SUSTAIN THE HEARSAY OBJECTION OF DEB-ORAH BROWN.

VI. THE TRIAL JUDGE ERRED BY FAILING TO SUSTAIN THE EVIDENTIARY OBJECTION BY SAM BROWN.

Appellants interposed evidentiary objections during the trial on its merits. In each instance, the trial court overruled the respective objections made by appellants.

First, Deborah Brown objected to Sheriff Watkins' testimony that he checked the deed records to determine who owned the land on which the two marijuana patches were situated. The ownership of the land was never in issue. In fact, appellants claimed ownership to this land, they agreed that their home was located on it and they contended the surrounding property on which the marijuana was discovered was curtilage and subject to Fourth Amendment protection. This testimony was cumulative and repetitious to testimony offered by others, including the appellants, and we find no error in the trial court's ruling. See *Graham* v. *State*, 2 Ark. App. 266, 621 S.W.2d 4 (1981).

Second, Sam Brown objected to the prosecutor's question provided to Sheriff Watkins as to whether Mr. Brown appeared to know about the marijuana fields. Here, again, Brown's objection may have been well taken but prior testimony had previously been introduced without objection tending to show the Browns knew marijuana was located and cultivated on their property. We fail to see how appellants were harmed or prejudiced by the trial court's ruling in this instance even if it were incorrect.

For the reasons stated above, we affirm the lower court's judgment.

Affirmed.

CORBIN, J., dissents.

DONALD L. CORBIN, Judge, dissenting. The majority has chosen to overrule the Arkansas Supreme Court's decision of *Sanders* v. *State*, 264 Ark. 433, 752 S.W.2d 397 (1978).

Admittedly, the small patch of marijuana initially "discovered" by Mr. Lepel would fall within the doctrine of

"open field" search and not require a search warrant. This would support a conviction.

However, the evidence obtained by the search of the garden should have been quashed. The evidence in the case at bar seems to be a familiar repeat of the *Sanders* facts. Here, the sheriff described the garden to be "right down below the house." The garden was close enough to hear farm animals and talk with a person in the garden. There was a well-worn path between the house, pond and garden. The area was generally fenced. The garden had a high fence with vines and growth on it. The sheriff saw some of the vegetables in the garden with the marijuana. Phillips had her washing machine on the lower bench where there were two out-buildings and a mobile home. All of these facts support the need for a valid search warrant to search the curtilage and outbuildings. I just don't believe that because this tract of land was within a national forest that Phillips' and Brown's Fourth Amendment rights to privacy should be violated. I would reverse and remand for a new trial excluding any evidence related to the large garden.