Wayne DUMOND *v.* STATE of Arkansas

CR 86-50                                    721 S.W.2d 663

Supreme Court of Arkansas
Opinion delivered December 22, 1986

*Larry W. Horton*, for appellant.

*Steve Clark*, Att'y Gen., by: *Joel O. Huggins*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. In this criminal appeal Wayne Dumond, appellant, challenges his conviction for the rape and kidnapping of a seventeen year old girl. The victim alleged that after arriving home from school on September 11, 1984, a bearded man entered her home and abducted her at gunpoint. He drove to a remote area and raped her. She managed to talk him out of killing her and he then drove her back home. Some weeks later the victim was driving in Forrest City when she saw appellant, clean-shaven, driving a pickup truck. In the belief he was her attacker, she reported the incident to the police. Appellant was convicted on both charges and sentenced to life imprison-

ment plus twenty years, the sentences to run consecutively. On appeal he raises four points of error which are without merit.

Appellant first argues the trial court erred when it did not grant his motion for mistrial based on the state's nondisclosure of a fingerprint report. During the testimony of a police officer there was reference to a report on fingerprints lifted from the victim's car, used in the abduction. The defense objected, saying it had no knowledge of the report. The prosecutor also denied knowing about the report. The record is sketchy but it seems the state agreed or was ordered to furnish the report, if it could be located, and if not to produce someone from the Arkansas Crime Lab to testify about the report. That afternoon, Ralph Turbyfill, the chief latent fingerprint examiner for the State Crime Lab, testified. He said he had studied the prints lifted from the car but found they "did not contain a sufficient number of characteristics to make an identification or either to eliminate or identify anybody. In other words the latent fingerprints were not identifiable." The witness was cross-examined by the defense, a few additional questions were asked on redirect and the witness was excused. There were no further objections by the defense. One more witness was called for the state and the state rested. At that time the defense requested a mistrial based on the state's failure to turn over the fingerprint report, claiming they had no chance to have other experts examine the material.

Prior to trial, appellant had made a motion objecting to the prosecutor's "open file" policy and requesting specific disclosure of scientific tests. Appellant complained he had received the results of certain tests but wanted the information on which such results were based. The pretrial order in response to this motion did not direct the prosecution to divulge any specific information but did provide that the defendant's attorney could view, copy and obtain any and all information pertaining to scientific tests.

We note at the outset that while the prosecutor denied knowledge of the fingerprint report, that information is imputed to him. *Lewis v. State*, 286 Ark. 372, 691 S.W.2d 864 (1985).

We said in *Thomerson v. State*, 274 Ark. 17, 621 S.W.2d 690 (1981), the state is under no duty to make certain scientific tests and a defendant in a criminal case cannot rely upon discovery as a total substitute for his own investigation. The

state's action in this case did nothing to prevent appellant from making his own examination of the fingerprints. However, the state's argument that appellant could have made his own investigation does not suffice. Rather, the defendant is entitled to the opportunity, apart from his own investigations, to challenge conclusions drawn from tests undertaken by the state. Here, the state could not determine from its tests whether appellant had been in the car. It would be as important for the defense preparation to study what the state was going to present as well as anything the appellant might have prepared. It relates not to the right to investigate, but to the effective preparation of a defense and rebuttal. A.R.Cr.P. Rule 17.1(a)(iv) provides for the discovery of any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations, scientific tests, experiments or comparisons.

The Commentary to 17.1(a)(iv) states:

Adoption of this rule demonstrates the Commission's agreement with *Standards Reporters* that nowhere is there greater need for pretrial disclosure or less risk of misuse of evidence than in this area. Unless adequate opportunity to examine this type of evidence is afforded, the chances for effective rebuttal are virtually foreclosed.

It is noted in LaFave:
[The disclosure of all scientific reports is justified.] Once the report is prepared, the scientific expert's position is not readily influenced, and therefore disclosure presents little danger of prompting perjury or intimidation. Disclosure is also justified on the ground that it lessens the imbalance which may result from the State's early and complete investigation in contrast to the defendant's late and limited investigation. *It is further noted that this sort of evidence is practically impossible for the adversary to test or rebut at trial without an adversary opportunity to examine it closely.* LaFave, Cr. Proc., V.2, § 19.3.

Here, appellant made the appropriate request under Rule 17.1 and sought the basis of the results of any tests. While the information testified to by the expert was neutral and nonprejudicial, appellant was entitled to challenge the state's conclusion by having his own tests performed.

However, appellant's mistrial request was untimely. His objection was that the defense was entitled to have the report. There was a recess with no further comments by the defense. The expert's testimony ostensibly cured the problem as there was no objection before, during or after the fingerprint expert testified and no further discussion of the matter. The appellant must make known to the court the action he wishes the court to take. *Walker v. State*, 280 Ark. 17, 655 S.W.2d 370 (1983). Here the appellant's initial objection and request related only to being entitled to see the report and the record shows this was resolved. Appellant was given all the relief requested, *Mitchell* v. *State*, 281 Ark. 112, 661 S.W.2d 390 (1983).

■ Appellant did not make his objection at the first opportunity, he waited until after the testimony of the last witness and the state had rested. *Earl* v. *State*, 272 Ark. 5, 612 S.W.2d 98 (1981); *Young* v. *State*, 283 Ark. 435, 678 S.W.2d 329 (1984). The defendant cannot wait to see the full strength of the state's case before bringing his request to the attention of the trial court.

As his next point, appellant contends the trial court abused its discretion in allowing the state's expert to testify on certain matters. The expert, a serologist, stated in response to a question by the prosecution that the proportion of the male population with "A" blood type, who were also secreters and were vasectomized, would equal 60 in 10,000. Appellant submits this went beyond the expertise of the witness and the expert lacked "insight as to the actual basis for his conclusion." We disagree.

A report of appellant's vasectomy had been read to the jury and the serology expert was then qualified. The expert described his work as wholly forensic, that he examined physical evidence for the presence of bodily fluids that could have been transferred, such as blood, semen and saliva. When the defense objected to the statement in contention, the state qualified the expert in this area. The expert stated that such information was available in the pertinent literature, that he had used it before and studied it in his work. There were no further objections during direct testimony.

On cross-examination the defense had the opportunity to bring out any perceived weakness in the testimony. The expert admitted he did not know what percentage of the population was sterile, that there were many ways individuals could be perma-

nently as well as temporarily sterile, and that he could not limit the perpetrator to 60 people. He acknowledged the statement was only in response to the parameters given him in the state's question. He also stated the number of potential perpetrators was not consistent with his own tests.

The determination of the qualifications of an expert witness lies within the discretion of the trial court and his decision will not be reversed unless that discretion has been abused. *Dixon v. State*, 268 Ark. 471, 597 S.W.2d 77 (1980). No firm rule can be derived which would serve uniformly as a means of measuring the qualifications of an expert, but too rigid a standard should be avoided, and if some reasonable basis exists from which it can be said the witness has knowledge of the subject beyond that of persons of ordinary knowledge, his evidence is admissible. *Dildine v. Clark Equipment Co.*, 282 Ark. 130, 666 S.W.2d 692 (1984).

There can be no serious question but that serologists are qualified to testify as experts in their field and appellant's objection went to weight and credibility and not admissibility. The defense had the opportunity to expose the limited applicability of the expert's statement and used that opportunity with fair success. There was no error in admitting this testimony.

For his third point, appellant argues the trial court should not have denied his motion for a continuance to produce his own serologist. When it was time for appellant's expert to testify, the defense stated he was not available, having suffered a reaction to a bee sting. The expert's associate was present but appellant did not consider him qualified to testify.

Although appellant insists the testimony of the absent expert was critical, he proffered nothing to indicate what he expected to prove by the expert. Furthermore, the state pointed out at trial that the expert's associate was listed as a defense witness, yet the defendant made no attempt to qualify him. The decision to grant or deny a continuance is within the trial court's discretion and will not be reversed absent an abuse of the discretion. *Webster v. State*, 284 Ark. 206, 680 S.W.2d 906 (1984). The burden is on the appellant to demonstrate the trial court's error and that burden was not met.

As a final point, appellant argues it was error to permit the state to introduce a receipt for an automotive part, urging the evidence was irrelevant. Appellant had worked for Mr. and Mrs. Kellum. Some two weeks before the incident Mr. Kellum had sent appellant to West Memphis to purchase a starter. Appellant was gone four or five hours on an errand that should have taken only an hour or two. The state's intended implication was that appellant used the time to observe the victim's movements. We concede the proof had only marginal relevance, however, we have frequently held that relevance is a matter for the trial court's discretion and is not reversible unless an abuse of discretion occurs. *Hamblin* v. *State*, 268 Ark. 497, 597 S.W.2d 589 (1980). No abuse is demonstrated. Besides, both Mr. and Mrs. Kellum testified about the incident with no objection from the defense until the receipt itself was offered as an exhibit to the proof already received. Evidence that is merely cumulative or repetitious of other evidence admitted without objection cannot be claimed to be prejudicial. *Brown* v. *State*, 5 Ark. App. 181, 636 S.W.2d 286 (1982).

The judgment is affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. The "open file" policy has once again proved that it pays to hide things you do not want discovered. The defense had no knowledge that fingerprints had been examined by the Arkansas Crime Laboratory until it was disclosed by state witnesses during the trial. There was no logical reason why the state could not have made the fingerprints, or lack of them, available to the defense. I am sure the Arkansas Crime Laboratory is not the only place in the country where latent fingerprints can be examined. We will never know whether an independent fingerprint examiner could have identified these prints and solved the case, or at least have determined whether or not the prints belonged to the defendant.

We have many times held that the prosecuting attorney's obligations of disclosure under Rule 17.1, subject to Rule 19.4, extend to material and information within the possession and control of members of his staff or others who have participated in the investigation or evaluation of the case. *Thomerson* v. *State*, 274 Ark. 17, 621 S.W.2d 690 (1981); *Lacy* v. *State*, 272 Ark. 333,

614 S.W.2d 235 (1981); and *Williams* v. *State*, 267 Ark. 527, 593 S.W.2d 8 (1979). So far as I am concerned the appellant was entitled to this potentially exculpatory information and it was prejudicial error to refuse a mistrial or, in the alternative, to grant a continuance. In *Thrasher* v. *State*, 270 Ark. 322, 604 S.W.2d 931 (1980), we held it to be reversible error when the state failed to produce evidence held in the investigator's file. See also *Lewis* v. *State*, 286 Ark. 372, 691 S.W.2d 864 (1985), in which we held that information held by the police is imputed to the prosecution.

The majority seems to hold that prejudicial error occurred, but was waived for lack of timely action by the defense. I agree that the error was prejudicial. However, I do not agree that this error was waived because of the lack of a specific objection before, during, or after the fingerprint expert testified. The basis for the motion for a mistrial clearly was the lack of an opportunity to have the prints independently examined.

Next, I believe it was prejudicial error not to grant a continuance when appellant's serologist witness was unavoidably unable to appear at the exact time he was needed. The witness had been on standby for several days. When called to come to the trial and testify it was discovered that the doctor had had a reaction to a bee sting a few hours earlier and was physically unable to appear. Since it was midafternoon and the trial was going into the next day regardless of whether this witness testified, it would have been only a slight inconvenience to the trial participants for the court to have granted a continuance. The denial of a continuance helped no one but the state.

The final and most prejudicial error was in allowing testimony that appellant was unexplainably absent from his job for a period of two or three hours. The absence was two weeks prior to the rape and was not shown to have any bearing upon the trial in progress. The state argued it was relevant because the appellant could have used the time to "stalk" the victim's residence. In addition to the prosecutor's remarks on the subject of this absence, at least two witnesses testified concerning the two hour unauthorized absence from work. This testimony simply was not relevant.

No doubt many people see this as harmless error. To me it was highly prejudicial and this decision will result in even more

serious consequences through expansion in the future. If an accused is required to account for and explain his daily and hourly activities, or inactivity, it will surely lead to more convictions, regardless of guilt. It is just as likely that the appellant spent a couple of hours at Mud Island as it is that he had been stalking the victim. He could have been thousands of places doing innumerable things. The evidence surely forced the jury to speculate about the absence and no doubt it may have had an influence in the jury's decision.

I would reverse and remand for a new trial.