Freida Ann PHILLIPS *v.* STATE of Arkansas

CR 87-69                                                     739 S.W.2d 688

Supreme Court of Arkansas
Opinion delivered November 23, 1987

*Mathis & Mathis*, by: *Travis Mathis*, for appellant.

*Steve Clark*, Att'y Gen., by: *Mary Beth Sudduth*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Freida Ann Phillips has appealed from her conviction of the first degree murder of her son, David. The disputed issues were the element of premeditation and whether Mrs. Phillips was capable of distinguishing between lawful and unlawful conduct and conforming her behavior to the requirements of the law.

The state proved that David Phillips, a two year old male, died by drowning. Mrs. Phillips reported to the police that she had put her son down for his nap and later in the afternoon she discovered that he was missing. After some hours spent investigating the possible whereabouts of the child, Mrs. Phillips led police to the Davidson Campground where David's body was found in one of the cabins. Mrs. Phillips explained that she had left David briefly in the bathtub and when she returned he was under water. Unable to revive him, she took his body to the campground where it was later found.

Mrs. Georgia Pipkin testified that she had known Freida Phillips for about fifteen years. She was Mrs. Phillips's close friend and confidant. Mrs. Phillips told Mrs. Pipkin she was unhappy and depressed when she learned that she was pregnant, that she hated the child and her life since his arrival, that she prayed that David would die. The witness testified to chronic neglect of David and to a number of attempts by Mrs. Phillips to choke him, suffocate him or force objects down his throat. Mrs. Phillips told Mrs. Pipkin that she would kill David but for fear of getting caught. Mrs. Pipkin's repeated efforts to get Mrs. Phillips to discuss these feelings with her husband and her psychiatrist, Dr. Stuart Harris, went largely unheeded. Mrs. Pipkin testified that Mrs. Phillips was devoted to her older two children, but after David's arrival was depressed and irrational. She said she had reported the situation to the SCAN office.

Mrs. Phillips testified in her own behalf. She described periods of acute depression, requiring hospitalization. She maintained that she had exaggerated her mistreatment of David in her talks with Mrs. Pipkin, that she did not actually do all she said she had done in connection with David, in her depressed state she only wanted Mrs. Pipkin to feel as bad as she did. She told of putting David in the bathtub and contemplating the unfinished housework. She said the next thing she remembered was David under the water. The gist of her testimony was that she may have put David in the tub, "I don't know if I held him under. I just don't know. I had my hands on him and he was struggling and I pulled him out after he was dead."

Dr. Stuart Harris and Dr. Douglas Stevens testified on behalf of Mrs. Phillips that they diagnosed her condition as severe depression with psychosis, rendering her incapable of distinguishing between right and wrong or conforming her behavior to the requirements of the law.

In addition to the expert witnesses, the defense called Mrs. Beverly Bridges, a friend of Freida Phillips for some eight years. She said Mrs. Phillips had been active and involved in their church, serving for several years as vice president and then as president of the Young Methodist Women. Mrs. Bridges described the depression which accompanied Mrs. Phillips's pregnancy, how Mrs. Phillips made no preparations for the arrival of

the baby and of her indifference to her son after his birth. Mrs. Bridges was asked if, having observed Freida Phillips over this entire period of time, she had formed an opinion as to whether she was mentally competent. At this point the state objected and the trial judge stated that he would sustain the objections "based on your questions up to this point." Counsel for the defendant asked that his exceptions be noted and passed the witness for cross-examination.

■■ We are asked to reverse on the single issue that it was error to refuse to allow a lay witness, Mrs. Bridges, to give her opinion as to Mrs. Phillips's mental condition. We have held in an unbroken line of cases extending back for decades that a lay witness can testify to an opinion as to the competency of another if he or she has had an adequate basis for forming an opinion. *Graham* v. *State*, 290 Ark. 107, 717 S.W.2d 203 (1986). A.R.E. Rule 701. The rule was summarized in *Avery* v. *State*, 271 Ark. 584, 609 S.W.2d 52 (1980):

> It is well established that a nonexpert witness may testify as to the sanity of a defendant if a proper foundation is laid; however, the trial court should exclude the opinion testimony of a nonexpert witness whose association with the accused and opportunities for observation for a sufficient length of time are not adequately shown. *Little* v. *State*, 261 Ark. 859, 554 S.W.2d 312 (1977); *Raprich* v. *State*, 192 Ark. 1130, 97 S.W.2d 429 (1936); and *Davis* v. *State*, 182 Ark. 123, 30 S.W.2d 830 (1930). The trial judge will be reversed only if he has abused his discretion in passing upon the preliminary question of competency. *Raprich* v. *State, supra.* See also Rule 701, *supra.*

■ Whether the objection was sustained because the trial court felt a sufficient foundation had not been laid is not disclosed by the record, although it would seem that Mrs. Bridges's close association with Mrs. Phillips and her family over eight years both before and after the birth of David, provided ample foundation for an opinion. The state points out that there was no proffer of Mrs. Bridges's opinion as to the competency of Mrs. Phillips, although arguably the answer was apparent from the context within which questions were asked. A.R.E. Rule 103(a)(2). Assuming Mrs. Bridges would have testified that in

her opinion Mrs. Phillips was not mentally competent, we are satisfied no substantial prejudice resulted. A.R.E. Rule 103(a).

■ As we have noted, two experts testified on behalf of the defense—Dr. Stuart Harris and Dr. Douglas Stevens. Both individuals, one a psychiatrist, the other a psychologist, have had extensive training and practice in their respective fields. Both were examined exhaustively on direct and cross-examination and each gave unequivocal affirmance to the defense's position that Mrs. Phillips was incapable of appreciating the criminality of her conduct or of conforming her actions to the requirements of the law. Dr. Harris, it might be noted, had been a treating physician of Mrs. Phillips for two years prior to the death of David Phillips, and was thoroughly familiar with her psychiatric history. We conclude that the single answer by a lay witness, under the circumstances of this case, concerning the mental competency of the defendant, was cumulative of other, more material testimony on the same issue and the exclusion was, therefore, harmless. *Dumond* v. *State*, 290 Ark. 595, 721 S.W.2d 663 (1986); *Hall* v. *State*, 286 Ark. 52, 689 S.W.2d 594 (1985).

We have examined all other objections made during the trial pursuant to Rule 11(f), Rules of the Supreme Court, Ark. Stat. Ann. Vol. 3A (Repl. 1977) and find no error. See *Earl* v. *State*, 272 Ark. 5, 612 S.W.2d 98 (1981).

Affirmed.

PURTLE, J., and NEWBERN, J., dissent.

JOHN I. PURTLE, Justice, dissenting. The appellant was charged with first degree murder. In presenting her defense, she called two expert witnesses, Dr. Stuart Harris and Dr. Douglas Stevens, who testified that she was incapable of distinguishing between right and wrong or conforming her behavior to the requirements of the law. The defense attorney then called a lay witness, a close friend, to give an opinion about appellant's mental condition. Her attorney asked the witness if she had formed an opinion about whether the appellant was mentally competent. After the trial court sustained the state's objection, the appellant's attorney failed to make a proffer of proof.

Our common law clearly establishes the rule that a lay witness may testify about the mental competency of an accused if

a proper foundation is laid. *Graham* v. *State*, 290 Ark. 107, 717 S.W.2d 203 (1986); *Avery* v. *State*, 271 Ark. 584, 609 S.W.2d 52 (1980); *Little* v. *State*, 261 Ark. 859, 554 S.W.2d 312 (1977). In addition, we have said that lay testimony about mental competency is admissible in light of A.R.E. 701 because "a witness may give a non-expert opinion on matters rationally based upon his perception if it is helpful to a clear understanding . . . of a fact issue." *Graham* v. *State, supra.* Arkansas Statute Annotated § 41-602 (Repl. 1977) provides: "Evidence that the defendant suffered from a mental disease or defect is admissible to prove whether he had the culpable mental state required for commission of the offense charged." Because of this statute, we have said "even if the mental disease or defect did not constitute a defense, evidence of it was relevant on the question of his culpable mental state . . ." *Campbell* v. *State*, 265 Ark. 77, 567 S.W.2d 938 (1979).

A.R.E. Rule 103(a) and 103(a)(2) provide:

> (a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> . . .
>
> (2) Offer of Proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer *or was apparent from the context within which questions were asked.*

(Emphasis added.)

The above quoted rule means that there is no need for a proffer where the substance of the proffer would be apparent from the context in which the question was asked. *Henderson* v. *State*, 279 Ark. 435, 652 S.W.2d 16 (1983). The reason that a proffer is not required under such circumstances is that the law does not require a vain and useless act. *United States* v. *Alverez*, 584 F.2d 694 (5th Cir. 1978).

It is apparent from the context in which the question was asked that the witness would have testified that her friend was not mentally competent. Appellant's trial lawyer was entitled to rely on our rule of evidence and not make a formal proffer.

The majority opinion acknowledges that the trial court's ruling was probably in error, but holds that it was not prejudicial because an expert witness testified to the same effect. I cannot come close to agreeing. In *Curry* v. *State*, 271 Ark. 913, 611 S.W.2d 745 (1981), four doctors gave their expert opinion that Curry was not mentally competent to understand the criminality of murdering five persons. There was lay testimony that she was mentally competent. In upholding the jury verdict finding her guilty of capital murder, we held that the jury was not bound by the unanimous opinion of the four medical experts. Likewise, I cannot say with any degree of certainty that the jury in the present case might not have believed the lay witness even though two experts had also expressed the same opinion. Mrs. Bridge's testimony may have been the basis of a jury verdict finding the appellant to have been mentally incompetent.

The ruling was prejudicial and I would reverse and remand for a fair trial.

NEWBERN, J., joins in this dissent.