**Wayne Eugene DUMOND, Appellant,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.**

**No. 90–1034.**

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1990.

Decided Aug. 9, 1990.

Rehearing and Rehearing En Banc Denied Oct. 5, 1990.

---

John Wesley Hall, Jr., Little Rock, Ark., for appellant.

Theodore Holder, Little Rock, Ark., for appellee.

Before MAGILL, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

Wayne Eugene Dumond appeals a United States Magistrate's[1] dismissal of his habeas corpus petition, brought under 28 U.S.C. § 2254 (1988). In 1985, Dumond was convicted by an Arkansas jury of kidnapping and raping a seventeen-year-old high school girl, and sentenced to consecu-

tive terms of life imprisonment and twenty years. The Arkansas Supreme Court affirmed Dumond's conviction, *Dumond v. State*, 290 Ark. 595, 721 S.W.2d 663 (Ark. 1986) (*Dumond I*), and denied his application for post-conviction relief. *Dumond v. State*, 294 Ark. 379, 743 S.W.2d 779 (Ark. 1988) (*Dumond II*). Dumond filed a petition in district court seeking habeas corpus relief, which relief the court denied. Dumond filed his first appeal from the district court's denial of his petition, and we reversed and remanded for a further hearing. We based this remand on newly discovered scientific evidence involving genetic testing. *Dumond v. Lockhart*, 885 F.2d 419 (8th Cir.1989). Following a hearing before the magistrate in which the victim testified about facts relevant to the results of the genetic testing, the magistrate held that Dumond "failed to present sufficient evidence to substantiate his newly discovered evidence claim" and dismissed Dumond's petition. *Dumond v. Lockhart*, No. PB–C–88–631, slip op. at 4 (E.D.Ark. Dec. 15, 1989). We affirm.

On September 11, 1984, Ashley Stevens was abducted from her home in Forrest City, Arkansas. A man entered Stevens's home and forced her at gunpoint to follow him. The two drove in her automobile to a secluded area. The man forced Stevens to remove her jeans and underpants and he positioned them beneath her. Stevens testified that the rapist then forced her to engage in vaginal intercourse. The assailant used a prophylactic, but he did not ejaculate. The rapist withdrew from Stevens, pulled off the prophylactic, and forced her to perform oral sex. Stevens testified that the rapist ejaculated in her mouth but she spit it out on the ground. The assailant again forced Stevens to engage in vaginal intercourse but he purportedly did not ejaculate. Thus, Stevens testified that the rapist ejaculated only during oral sex.

As indicated, Dumond was convicted of kidnapping and raping Stevens. After his

---

1. The Honorable H. David Young, United States Magistrate, United States District Court for the    Eastern District of Arkansas.

appeal was denied by the Arkansas Supreme Court in *Dumond I*, Dumond obtained new counsel and submitted Stevens's clothing to Dr. Moses Schanfield, an expert in genetic testing. Dr. Schanfield conducted an immunoglobulin allotype test[2] on semen located on Stevens's pant leg. Dr. Schanfield concluded that if the semen was "pure" and not mixed with vaginal fluids, there was a greater than ninety-nine percent probability that Dumond was not the rapist because the semen lacked a genetic marker which Dumond possesses. Thus, if the rapist ejaculated only during oral sex, as Stevens testified, the semen on the pant leg was "pure" because saliva does not alter the immunoglobulin allotype test. If vaginal fluids were mixed with the semen, however, Dr. Schanfield reported that the results would be inconclusive.

In *Dumond II*, the Arkansas Supreme Court denied Dumond's petition for post-conviction relief under Ark.R.Crim.P. 37.1. Dumond asserted that because of the newly discovered evidence of this genetic test, due process dictated that he was entitled to a new trial. The court found that Dumond's claim regarding the newly discovered evidence was a direct, rather than a collateral attack on the judgment. Accordingly, Dumond's claim was not within the purview of Rule 37.1. *Dumond II*, 743 S.W.2d at 782.

In his writ of habeas corpus petition to the federal district court, Dumond presented his newly discovered evidence claim and attempted to compel Stevens's testimony at the habeas hearing. As stated, Stevens had testified at trial that the rapist ejaculated only during oral sex. Accordingly, Dumond asserted that the semen was not mixed with vaginal fluids and, thus, was "pure" semen. Therefore, Dumond argued, he could not be the rapist because

the semen lacked his genetic marker. The United States Magistrate[3] quashed Dumond's subpoena and found that the record did not support Dumond's assertion that the semen on Stevens's pant leg was "pure" semen. Dr. Schanfield had tested Stevens's jeans and underclothing and had found large amounts of semen, some of which was deposited vaginally. Thus, there was no strong evidence that the semen on the pant leg was "pure."

As indicated, pursuant to Dumond's first appeal, we reversed and remanded for a further hearing based on purported inconsistencies in the evidence concerning the location and the number of ejaculations. We stated that relief could be granted to Dumond only if his newly discovered evidence "would probably produce an acquittal on retrial." *Dumond*, 885 F.2d at 421 (quoting *Mastrian v. McManus*, 554 F.2d 813, 823 (8th Cir.) (citations omitted), *cert. denied*, 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977)). Without offering Dumond the opportunity to question Stevens concerning the specific details of the location and the number of ejaculations, we believed that we were incapable of determining whether the evidence probably would produce an acquittal.

On December 13, 1989, Stevens testified at the hearing on remand. Stevens offered the same facts concerning the rapist's actions as she had testified to at trial, and she stated that she did not know how semen got on her pant leg. *See* Hearing Transcript at 11. In addition, Stevens testified that she could not explain why the amount of semen on her clothing was equal to approximately three ejaculations when she could remember her assailant ejaculating only once. The magistrate found that Stevens's testimony did not aid Dumond because her testimony actually tended to

---

**2.** As this court in *Dumond*, 885 F.2d at 420 n. 1, explained:

> Immunoglobulins are antibody molecules which are found in the blood and other body fluids and which carry genetic markers known as allotypes. A genetic marker is simply an inherited trait. Thus, the immunoglobulins are tested to detect the presence of genetic markers. For instance, if an individual is known to have a certain genetic marker and the allotyping test reveals that the marker is missing in the fluid being tested, then the fluid could not have come from that individual.

**3.** The parties consented to the United States Magistrate's jurisdiction under 28 U.S.C. § 636(c)(1) (1988).

 

cast further doubt on the theory that the semen on the pant leg was "pure" semen. Stevens stated that after her assailant ejaculated during oral sex, she turned her head and spit out the ejaculate onto the grass by her head. This ejaculate was the only possible source of "pure" semen. Stevens also testified that her jeans were underneath her and not by her head. Thus, the magistrate stated that it was "highly unlikely that the oral ejaculate would have come in contact with the pants." *Dumond*, No. PB–C–88–631, slip op. at 2. Accordingly, the magistrate concluded that without proof that the semen on the pant leg was "pure," the genetic testing and Dr. Schanfield's opinion concerning whether Dumond was the assailant were inconclusive. Further, the magistrate determined that Dumond was actually raising an insufficiency of the evidence claim because he argued that Stevens's confusion on the location and number of ejaculations compelled a total rejection of the evidence identifying him as the rapist. The magistrate, however, determined that Stevens's identification testimony was very strong and there was sufficient evidence on which the jury could base its guilty verdict. The magistrate dismissed Dumond's petition.

As we previously stated, the standard in this case is whether the newly discovered evidence "would probably produce an acquittal on retrial." *Dumond*, 885 F.2d at 421. As earlier indicated, at the hearing on remand, Stevens responded to questions concerning her rapist's ejaculations. Even with her testimony, Dumond, who had the burden of proof, was not able to establish that the semen was "pure." After examining Stevens's testimony at the hearing on remand and the strong evidence against Dumond which was presented at trial, we hold that the newly discovered evidence would not "probably produce an acquittal on retrial." *Id.* Thus, we affirm the magistrate's denial of Dumond's petition for writ of habeas corpus.